TURNER v. COMMISSIONERS OF HILLSBORO.

(November 13, 1900.)

1. *Evidence—Immaterial—Harmless Error—Map.*

It was harmless error to refuse to admit in evidence a map, a similar one already being in evidence.

2. *Limitations of Actions—Municipal Corporations—Adverse Possession—Trust.*

Statutes of limitation do not run against a municipal corporation holding land in trust for public use unless it has the power of alienation.

CIVIL ACTION by C. D. and D. Turner, trustees of T. D. Turner, against the Board of Commissioners of Hillsboro, heard by Judge *Frederick Moore* and a jury, at Spring Term, 1900, of ORANGE Superior Court. From judgment for plain-tiff, the defendants appealed.

*John W. Graham,* for plaintiff.
*Frank Nash,* for defendants.

CLARK, J. This is an action for damages for trespass in entering upon plaintiffs' premises to open up streets. The defendants claimed that the *locus in quo* was part of the com-mons originally conveyed to the town in trust, and that the

plaintiffs, who did not show any paper title from the town, were not protected by any duration of adverse possession. It was in evidence that September 9, 1754, William Churton conveyed 653 acres to Francis Corbin, reserving the 400 acres on which the town of Orange had theretofore been laid out. For a few years the town was known as "Corbinton" or "Corbin New Town." On November 20, 1759 (St. 33 Geo. II.), it was incorporated by the name of Childsburg. Section 3 of the act provided that, after laying out 200 acres in the streets and lots, "the residue thereof shall be and remain for a common thereto." The name of the town was changed to Hillsboro, November 3, 1766. The town authorities has no authority to sell any part of said 200 acres of commons until chap. 152, Acts 1830-31, which empowered them "to sell or dispose of from time to time, as to them may seem most proper, all or any part of the commons of said town." There would have been no authority to sell such property without a special act of the General Assembly. *City of Southport v. Stanly,* 125 N. C., 464. There was evidence tending to show that thereafter, by virtue of said act, the town commissioners did sell the greater portion of said commons, and in 1898 sold the remainder, except a portion adjoining the land in controversy, which the plaintiffs forbade the sale of. It was thereafter that the defendants, in opening up and extending streets already in existence, committed the alleged trespass.

The evidence tended to show that the land in controversy was part of the original 400 acres, but that the owners of the adjoining tract had cultivated up to a row of cedars, the dotted line on the map, to which plaintiffs now claim, for 70 years. The plaintiffs claim title by adverse possession for more than 20 years.

The map offered in evidence by defendants should probably

have been admitted (*Andrews v. Jones,* 122 N. C., 666, and cases cited); but we can not see that its exclusion was material or prejudicial. It was a map made by the town in 1889, and corresponded with the map already in evidence, which was made under an order of survey in this cause. The defendants requested the Court to charge: "If the jury believe that the land in controversy was originally part of the commons belonging to the town of Hillsboro, or its predecessor, Childsburg, then the possession of the plaintiffs, and those under whom they claim, had not ripened, and does not ripen, into title against the town; said town being a municipal corporation, holding said commons for a public use." This the Court declined, and instructed the jury instead that if they should "find from the evidence that the plaintiffs, and those under whom they claim, have been in possession of the land in controversy, openly, continuously, and every part thereof, adversely, claiming the same as their own, under known and visible boundaries, for twenty years, it being admitted that the title is out of the State, then they have a title in fee to such land, and the jury must answer the first issue, 'Yes,' and then define the boundaries of such of the lands in controversy as they should find that the plaintiffs are entitled to because of such possession," and defendants excepted.

As to streets, ways, squares, parks, commons, and other property which a municipal corporation may hold in trust for the public use, without power to alienate, it is true that no statute of limitations can run. *Moose v. Carson,* 104, N. C., 431. Since no one would obtain any title thereto if he had a deed from the town, no adverse possession, however long, would bar the town. (*City of Alton v. Illinois Transp. Co.,* 12 Ill., 60; *Webb v. City of Demopolis* (Ala.) 13 South., 289; 2 Dill. Mun. Corp., (4th Ed.); secs. 669, 671); and the same was the civil law, (Id. sec. 670). This has been affirmed in

this State by a statutory declaration (chapter 224, Acts 1891; Clark's Code, (3d. Ed.), sec. 150a); but as to all other matters the statute of limitations runs against a municipality as against anyone else. Acts 1831-32, above cited, took from the commons here in question its inalienability. Sale thereof was authorized. Much of it was sold. A conveyance from the town since that date for any part thereof would be valid, and it follows that 20 years' adverse possession, up to a known and visible boundary,—the row of cedars, the dotted line on the map,—confers a good title.

It was in evidence that in 1844-46 it was contended by the town that Alfred Waddell was trespassing upon the town property at the *locus in quo,* and he was notified by the municipal authorities that he must pay rent therefor or be ousted, but there was no evidence that he complied. The defendants ask the Court to charge: "If the jury believe that Alfred Waddell's possession of the land in controversy was originally permissive, then the possession of those who claim under and through him can not become adverse until they, or some one of them, by some positive act, such as a disclaimer, refuse to admit the original permission, [and not even then, as against municipal corporation."] The Court gave this as requested, omitting the words in brackets. The defendants can not complain of this modification, for the reason given above.

Affirmed.