## M. E. THREADGILL v. THE TOWN OF WADESBORO.

(Filed 12 January, 1916.)

**1. Municipal Corporations—Cities and Towns—Limitation of Actions—Statutes.**

Prior to the enactment of chapter 224, Laws 1891, title to lands by adverse possession could be acquired against a State or a municipal corporation, which is a political agent of the State; and where before the enactment of this statute sufficient possession of the character required had ripened the title to a part of a street of a city under our statutes, Revisal, secs. 375 and 381, as construed by the decisions of our Supreme Court, the municipality may not reassert the lost ownership except under the power of eminent domain vested in it by the law and for the public benefit.

**2. Same—Courts' Decisions.**

Where an owner has acquired title by adverse possession to a part of a street under The Code of 1868 and the construction placed thereon by the decisions of the Supreme Court, the reversal of the principle thereafter by this Court cannot disturb the title theretofore acquired.

**3. Municipal Corporations—Cities and Towns—Streets—Limitation of Actions—Appeal and Error.**

Where one claims title to a part of a city street by adverse possession, and the city has pleaded the statute of limitations, and it has properly been ascertained and adjudicated by the trial court that the *locus in quo* was not a part of the city's street, it is *Held,* that the question whether such right by adverse possession could be acquired against a municipality becomes immaterial.

**4. Evidence—Boundaries—Reputation—Declarations.**

The principle which admits evidence of the reputation as to corners or boundaries of lands applies to both public and private boundaries.

**5. Appeal and Error—Evidence—Harmless Error.**

Where competent evidence is ruled out over objection, but is fully testified to by the same witness, it does not constitute reversible error.

41—170

**6. Evidence—Municipal Corporations—Streets—General Reputation.**

General reputation in a town of the width of its streets is incompetent in an action involving title, where it is not shown that the same did not take its rise at a comparatively remote period and *ante litem motam*.

CLARK, C. J., dissents.

APPEAL by defendant from *Devin, J.;* at April Term, 1915, of ANSON.

Civil action to recover damages of defendant corporation for wrongfully entering on a lot of plaintiff in said town with intent to appropriate 8 feet of same extending along the line of Martin Street, etc.

Defendant denied liability, claiming that the 8 feet in dispute was a part of Martin Street and defendant had the right to enter and appropriate the same for the purpose indicated.

The entry complained of was in December, 1914.

On issues submitted, the jury rendered the following verdict:

1. Did defendant wrongfully enter upon the lands of plaintiff? Answer: "Yes."

2. If so, what damages is plaintiff entitled to recover? Answer: "$500."

Judgment on the verdict for plaintiff, and defendant excepted and appealed.

*Robinson, Caudle & Pruette for plaintiff.*
*J. W. Gulledge and Lockhart & Dunlap for defendant.*

HOKE, J. There was evidence on the part of plaintiff tending to show that she and those under whom she claimed had continuously occupied and possessed this lot under deeds purporting to convey the title, since 1848, and asserting ownership to the line of a fence which had continuously inclosed the property for that length of time.

As we understand the record, there was no substantial dispute as to the facts of this occupation inside the fence, but it was contended for defendant, and there was evidence on its part tending to show, that the fence in question was an encroachment on a public street of the town to the extent of 8 feet, and they had a right to reassert control of same for the public benefit.

Under the law of this State as it formerly prevailed, title by adverse occupation could be acquired against a municipality. This was established and recognized as a rule of property not only under our decisions applicable to the question, *Moore v. Meroney,* 154 N. C., 163; *S. v. Long,* 94 N. C., 896; *Crump v. Mims,* 64 N. C., 767; but the principle was embodied in our statute law in 1868, now Revisal, secs. 375 and 381.

Section 375 provides: "That the limitations prescribed by law shall apply to civil actions brought in the name of the State or for its benefit

in the same manner as to actions by or for the benefit of private parties," and section 381 of the statute, especially as to real property: "That all such possession as is described in the preceding section, under such title as is therein described, is hereby ratified and confirmed and declared to be a good and legal bar against the entry or suit of any person, under the right or claim of the State." Construing these sections, the Court has held that the maxim, *"Nullum tempus occurrit regi,"* no longer obtains here, even in the case of collecting taxes, unless the statute applicable to or controlling the subject provided otherwise. *Wilmington v. Cronley,* 122 N. C., 387; *Furman v. Timberlake,* 93 N. C., 67. This being the law as it formerly prevailed, the Legislature, in 1891, chapter 224, Revisal, sec. 389, enacted a statute, "That no person or corporation shall ever acquire any exclusive right to any part of any public road, street, lane, alley, square, or public way of any kind by reason of any occupancy thereof or by encroaching upon or obstructing the same in any way; and in all actions, whether civil or criminal, against any person or corporation on account of any encroachment upon or obstruction of or occupancy of any public way it shall not be competent for any court to hold that such action is barred by any statute of limitations."

At the time this last statute was enacted and under the unchallenged testimony, plaintiff and those under whom she claimed had occupied the property to the line of her fence, asserting ownership, for more than forty years, and it was not then open to the Legislature to reassert the lost ownership of the street except under the power of eminent domain vested in defendant by the law and for the public benefit. Defendant's entry here, however, was under claim of right and without resorting to this principle.

We were referred by counsel to *S. v. Godwin,* 145 N. C., 461; *Moose v. Carson,* 104 N. C., 431; *Turner v. Comrs.,* 127 N. C., 153, as being against the operation of the statute of limitations for plaintiff's protection. In *S. v. Godwin* the Court was referring to the law as it should prevail under the last statute on the subject, that of 1891, and in the opinion *Associate Justice Walker,* referring to the law prior to the statute, was careful to note that the case of *Moose v. Carson,* 104 N. C., 431, seemed to have overlooked the decision of the Court in *S. v. Long,* in which it was directly held, as stated, that title by adverse occupation could be acquired against the town. True, the case of *Moose v. Carson* gives decided intimation to the contrary, and this was approved in the subsequent case of *Turner v. Comrs., supra.* But both of these cases seem to have overlooked or ignored the decisions of *S. v. Long* and *Crump v. Mims,* and also the statute law on this subject ever since the enactment of The Code of 1868, and by which the maxim of *nullum tempus occurrit regi* was in effect abrogated.

The towns are only supposed to come under the influence of this maxim when and to the extent that they are properly considered governmental agencies of the State, and, if the State itself is barred by the statute, its subordinate agents may be barred also.

On the particular question now presented, the position for the future is not of great moment, the statute of 1891, Revisal, sec. 389, having established the principle suggested in *Moose v. Carson* and approved in *Turner v. Comrs.* as the law on the subject. And even if *Moose v. Carson* and *Turner's case* should be considered as modifying the former law, the first of these cases was not decided by this Court until September, 1889. At that time plaintiff's title had already matured, and, having been acquired under decisions constituting a rule of property, it could not be affected by judicial reversal of the principle in another case nor disturbed except under the power of eminent domain, as heretofore stated. *Hill v. R. R.,* 143 N. C., pp. 539-573; *Kirby v. Boyette,* 118 N. C., 244.

While we hold that the authorities referred to are, on the evidence, in any aspect of it, decisive of the case in plaintiff's favor, the position discussed is hardly open to defendant on the record, because the court below, being of opinion that if the land entered on by defendant had ever been a public street, as claimed, no statute of limitations would apply, submitted the issue to the jury on the question whether there had been any encroachment on the street, and they have determined that essential fact against defendant. In that aspect the case was fully developed and fairly tried, and we find no reason for disturbing the result.

As evidence that the streets and squares of the town were as claimed by them, defendants offered an old survey and plat made by David Carpenter in 1848, showing regular squares with streets 66 feet wide, etc. There was much evidence on the part of plaintiff that this plat was in no wise a correct representation of the plan of the town as laid out in or shortly after 1783, and in order to establish that the plat was correct, Mr. J. A. Little, a witness for defendant, was asked whether he knew that an old locust tree had reputation of being a pointer to a town corner, etc., and objection by plaintiff was sustained. The witness had fully qualified himself to speak to the reputation of this corner, and we do not see that the question was incompetent. The principle which admits evidence of this character applies to both public and private boundaries. As originally adopted and prevailing in England, it was confined to questions of public boundary, *Bland v. Beasly,* 140 N. C., pp. 628-630, but the objection may not avail defendant on the record, for witness was allowed to answer the question and speak fully and at large as to the pointer and its placing and the surveys made from it.

And the same answer may be made to an objection to a ruling as to the evidence of a witness, F. J. Coxe. He was asked as to the standard

width of the blocks and streets of the town, and he said he had, in his investigations, seen an old map of the town which had been lost and a blue-print, which was an exact copy, he had verified. He was asked if he knew the width of the streets and blocks as represented by the map and by general reputation of the town of Wadesboro. On the question of general reputation of the town, the witness had not qualified himself to speak, for, while such evidence is admissible, it must be first shown, among other things, that the same took its rise at a comparatively remote period and always *ante litem motam,* neither of which was shown; and as to the information derived from the map, the copy which the witness verified was introduced on the trial and showed the blocks and squares to be as he claimed. The plat here would seem to be the best evidence, and the jury had the benefit of it on the issue.

As heretofore stated, under the view of the law as held by the trial court, the issue was largely a question as to whether there had been any encroachment on the public streets.

After a full and fair investigation, it was resolved by the jury against defendant, and we find no error to defendant's prejudice, certainly that gives it any just ground of complaint. The judgment, therefore, is affirmed.

No error.

CLARK, C. J., dissents.