GUILFORD COUNTY v. GEORGE C. HAMPTON, JR., GUARDIAN OF
. SARAH SAFERIGHT.

(Filed 3 January, 1945.)

**1. State § 2a: Limitation of Actions § 1b—**

Generally, the maxim *"nullum tempus occurrit regi"* has been abro-
gated by G. S., 1-30, and is no longer in force in this State, except as
otherwise provided by statutory exceptions.

**2. Limitation of Actions § 2e: Counties § 2: Municipal Corporations § 7—**

G. S., 153-156, authorizing boards of county commissioners to reimburse
the counties for the support of indigent persons by sale in a special pro-
ceeding of any property of such persons, confers no sovereign power;
and as far as the indigent persons are concerned it creates a private
obligation only, which is subject to the bar of the three-year statute of
limitations. G. S., 1-52.

APPEAL by plaintiff from *Sink, J.,* at August-September Term, 1944,
of GUILFORD.

Sarah Saferight, an indigent of subnormal mentality, was admitted
to Guilford County Home on 11 January, 1909, and remained there
continuously from that time until the institution of this action, 18 April,
1944. (She is still there.) During all this time, she received mainte-
nance and support from Guilford County and to date the county has
received no compensation therefor. The reasonable value of this service
is $8,100 (R., p. 10). When said Saferight entered the County Home,
she was the owner of a tract of land in Sumner Township, Guilford
County, North Carolina, of the tax value of $100.00.

The County Commissioners of Guilford County never at any time
made a demand upon Sarah Saferight for compensation for her said
maintenance and support, and took no action to sell her land as provided
by C. S., 1330, now G. S., 153-156, until May, 1943. In May, 1943,
Guilford County brought a special proceeding before the clerk of the
Superior Court of Guilford County for the sale of the land of said
Sarah Saferight under the provisions of the statute aforesaid, and the
land was sold pursuant to orders of the court in said proceeding, and the
net proceeds of said sale, $8,137.20, were paid to G. C. Hampton, Jr.,
who was appointed guardian for Sarah Saferight after the sale. This
payment was made pursuant to an order of the court in the proceeding.
After payment as aforesaid was made, Guilford County filed its claim
for maintenance and support with the guardian, and the claim, except
the last three years' maintenance and support, $1,080, was denied.
Thereupon Guilford County instituted the present action. It was heard

before Judge Sink upon agreed facts, without a jury, and judgment was rendered denying the contentions of the plaintiff.

From this judgment plaintiff appealed.

*Thos. C. Hoyle and Rupert T. Pickens for plaintiff, appellant.*

*Andrew Joyner, Jr., for defendant, appellee.*

SEAWELL, J. The question posed is whether the three-year statute of limitations—G. S., 1-52—applies to an action brought by Guilford County against an inmate of the County Home to secure reimbursement or indemnity for sums expended for her upkeep in the Home, running back some thirty-four years. The proceeding is under G. S., 153-156.

Under the article relating to limitations of actions, it is provided in G. S., 1-46, "that the periods prescribed for the commencement of actions, other than the recovery of real property, are as set forth in this article."

Applicable to the actions therein designated, G. S., 1-52, a part of this article, provides:

"1-52. Three years. Within three years an action—

"1. Upon a contract, obligation or liability arising out of a contract, express or implied, except those mentioned in the previous sections.

"2. Upon a liability created by statute, other than a penalty for forfeiture, unless some other time is mentioned in the statute creating it."

These provisions were made applicable to actions by the State by section 159, Code of 1868, now G. S., 1-30, continuously in force from its enactment:

"Applicable to actions by state.—The limitations prescribed by law apply to civil actions brought in the name of the state, or for its benefit, in the same manner as to actions by or for the benefit of private parties."

Against the application of the statute to its claim, the appellant invokes the maxim *"nullum tempus occurrit regi,"* contending that the present action is brought to enforce a demand as to which the county, *pro hac vice,* is in the exercise of a sovereign power. It is argued that the Act of 1868 (G. S., 1-30), extending the statute of limitations to actions by the State, should not be construed as applying to actions brought in its sovereign capacity, and to enforce sovereign rights.

It is to be admitted that the course of decision has not been entirely consistent, but we doubt whether plaintiff can profit much by the confusion thus produced, such as it may be.

There can be no doubt that the cited Act of 1868, G. S., 1-30, was currently accepted as altogether abrogating the maxim *"nullum tempus occurrit regi"* or the principle of law finding expression therein, and this view remained unquestioned for a long period thereafter. In *Fur-*

*man v. Timberlake* (1885), 93 N. C., 66, it is declared that the maxim *"nullum tempus occurrit regi"* is "no longer in force in this State, having been abrogated by the provisions of The Code, sec. 159."

Historically, this view is strongly corroborated by the fact that numerous statutes were enacted as the years went by to exempt the State and its agencies from the limitations imposed by the general statute, with respect to actions undoubtedly involving the sovereign power and relating to sovereign rights. In 1891, by chapter 224 (G. S., 1-45), the General Assembly excepted from the supposed application of the general statute of limitations actions with respect to claims to any part of a public road, street, lane, alley, square or public way of any kind, etc.

In *Turner v. Commissioners* (1900), 127 N. C., 153, 37 S. E., 191, *Justice Clark,* commenting on the effect of the statute, said:

"As to streets, ways, squares, commons and other property which a municipal corporation may hold in trust for the public use, without power to alienate, it is true no statute of limitations can run . . . This has been affirmed in this State by a statutory declaration (chapter 224, Laws 1891) ; *but as to all other matters the statute of limitations runs against a municipality as against anyone else."*

Of that character is chapter 182, Public Laws of 1895, authorizing the State, county and city to recover delinquent taxes. If it had been thought that the maxim *"nullum tempus occurrit regi"* still applied, the enabling statute would have been unnecessary.

There is a tendency on the part of the Court in many cases to base the validity of recovery beyond the period of limitation upon exceptions made to the general statute by other statutes applicable to the designated agency, or subject of the action, rather than the effect of the doctrine implied in the maxim, operating *ex proprio vigore.* The trend is, at least, to limit its application to matters of taxation. *Threadgill v. Wadesboro,* 170 N. C., 641, 87 S. E., 521; *Manning v. R. R.,* 188 N. C., 648, 125 S. E., 555; *Charlotte v. Kavanaugh,* 221 N. C., 259, 20 S. E. (2d), 97.

We do not attempt to reconcile conflicting authority with regard to the application of the maxim cited, or to follow it further into its ramifications, which might lead only to unprofitable differences.

We come to certain illuminating legislation with regard to agencies on a parity with the plaintiff with respect to the principles and limitations under discussion. It affords, to some extent, a legislative interpretation of the law, and is certainly an acceptance of the prior conclusion of this Court in a case which we must regard as significant in the present controversy.

In *State Hospital v. Fountain,* 129 N. C., 90, 39 S. E., 734, the Court held that the three-year statute of limitation applied to an action of

the State to enforce collection of a claim for the care of a nonindigent patient. Thereafter, chapter 120, Public Laws of 1925 (G. S., 143-122), exempted claims of a number of State institutions from the application of statutes of limitations. Amongst them are the State Hospitals at Raleigh, Morganton and Goldsboro and various other institutions.

It is not contended, as we understand it, that the maxim *"nullum tempus occurrit regi"* applies to any other action than one brought to enforce a demand growing out of sovereignty. In *Charlotte v. Kavanaugh,* 221 N. C., 259, loc. cit. p. 265, 20 S. E. (2d), 97, it is said:

"An examination of the above cases will disclose that the three-year statute of limitations applies to the State, *and political subdivisions thereof,* in an action brought in the name of the State *or for its benefit, or for the benefit of political subdivisions thereof,* when the action is not brought in the capacity of its sovereignty."

And in *Threadgill v. Wadesboro, supra,* loc. cit. 644, *Justice Hoke,* speaking for the Court, observed:

"The towns are only supposed to come under the influence of this maxim *(nullum tempus,* etc.) when and to the extent that they are properly considered. governmental agencies of the State, and, if the State itself is barred by the statute (G. S., 1-30) its subordinate agents may be barred also."

Uniformly a distinction has been observed between actions brought by the State, counties and municipalities in their sovereign capacity, and those brought with respect to proprietary demands. The terminology is hardly sufficient for a complete classification unless there is included in the definition of proprietary claims certain causes of action contractual in their nature, or similar obligations arising out of the statute. The county of Guilford is under what we might regard as a constitutional mandate to provide for its poor at the public expense, through the levying and collection of a general tax for that purpose, and may provide a County Home. It is under no constitutional mandate to collect from a nonindigent inmate, or from her property, reimbursement for sums disbursed for her maintenance. That is merely a wise and just provision of the statute. G. S., 153-156, under which this proceeding is brought, is as follows:

"When any indigent person who becomes chargeable to a county for maintenance and support in accordance with the provisions of this article, owns any estate, it is the duty of the board of commissioners of any county liable to pay the expenses of such indigent person to cause the same to be sold for its indemnity or reimbursement in the manner provided under Article 3 of the chapter entitled Insane Persons and Incompetents, or they may take possession thereof and rent the same out and apply the rent toward the support of such indigent person. . . ."

It is further provided therein that an action may be brought in the name of the county against the owners and interested parties to sell, mortgage, or rent the property of the indigent for the purpose of such indemnity or reimbursement.

No one could contend that the power thus sought to be exercised by a civil action is the sovereign power of condemnation, conscription, or taxation, for, amongst other disqualifying features, it is not for a public purpose. It reaches no further than fair compensation for the maintenance, care and attention given her. It tends to reduce the general taxes, of course, but in so far as the defendant is concerned, and her relation to the action and to the party plaintiff, it is a private obligation arising out of the statute, which provides a simple procedure for its collection out of private property. While the general law may affect a great many persons, it is not in any sense a contribution levied by the State or county in its sovereign capacity for a public purpose, and is subject to the bar of the three-year statute of limitations.

It follows that recovery must be limited to items within the period of three years next preceding the commencement of the action.

The judgment is

Affirmed.