STATE HIGHWAY & PUBLIC WORKS COMMISSION OF NORTH CARO-
LINA, AN AGENCY OF THE STATE OF NORTH CAROLINA, v. DIAMOND
STEAMSHIP TRANSPORTATION CORPORATION.

(Filed 22 May, 1946.)

1. **Trial § 22a—**

On motion to nonsuit the evidence must be considered in the light most
favorable to plaintiff, and plaintiff is entitled to the benefit of every fact
and inference of fact reasonably deducible therefrom.

2. **Negligence § 1a—**

Actionable negligence is the failure to perform some duty which under
the circumstances one owes to another, which failure results in injury to
the latter.

3. **Pilots § 2—**

A contract under which a pilot mounts the bridge and is in complete
command of a vessel in its maneuvers up a navigable stream, notwith-
standing a tug is used in addition to the vessel's own power, is not merely
a contract of towage but also of pilotage, and the pilot is an independent
contractor.

4. **Master and Servant § 12—**

A contractee may be held liable for a negligent injury to property of a
third person in the performance of the work by an independent contractor
if the injury is the result of the contractee's own negligence or its own
negligence co-operates with that of the independent contractor.

5. **Pilots § 5—**

A ship owner in employing a pilot for a maneuver up a navigable stream
is under duty to exercise due care to avoid injury to others which can be
reasonably foreseen, and in the discharge of this duty, to advise the pilot
of dangers due to faulty maneuverability of the vessel of which it had
knowledge and of which the pilot is apparently unaware.

6. **Same—**

While the owner of a vessel has the right to assume that a pilot is
familiar with the river and its waters and has knowledge of vessels of
standard types, in this case a turret type vessel, it may not assume knowl-
edge on the part of the pilot of peculiarities and faulty equipment not
common to all vessels of the type, importing danger in the navigation
contracted for.

7. **Same—Evidence that vessel had peculiarities not common to all of its
type, and inferences of defective equipment held sufficient for jury on
question of negligence of owner in failing to warn pilot.**

This action was instituted by the State Highway and Public Works
Commission to recover damages resulting from the collision of a vessel
with the fender piling of a drawbridge. The vessel was being maneuvered
upstream under a contract of pilotage, the pilot using a tug in addition
to the vessel's own power. The vessel was turret type, with old type fore
and aft compound engine. There was testimony that this type vessel is

awkward and hard to handle. Plaintiff introduced the testimony of experienced pilots to the effect that they had handled this particular vessel and that she was hard to manage and would take unexpected sheers. The pilot in charge testified that the collision occurred when the vessel took an unexpected sheer to the left, that he immediately ordered the helm put hard to the right, that when the vessel did not respond he ordered the engine reversed, but that he did not feel the engine or rudder take hold and that the vessel hit the fender piling "before the wheel had turned over." The pilot further testified that he had not been told the vessel was hard to manage and that if he had been so advised he would have used another tug aft which would have avoided the sheer. *Held:* Considering only plaintiff's evidence in the light most favorable to it, there is some evidence that the vessel had peculiarities not common to all of its type which caused it to be particularly difficult to manage, and also evidence from which it may be inferred it had defective equipment, and therefore the evidence should have been submitted to the jury on the question of the owner's negligence in failing to warn the pilot of such peculiarities which imported danger under the circumstances.

**8. Pilots § 3—**

The authority of the master of a vessel is not in complete abeyance while the pilot is in the discharge of his functions, and he is under duty to give timely warning when he is aware that the ship is being operated in a manner likely to cause injury to third persons.

**9. Pilots § 5—**

The presumption of negligence arising when a vessel strikes a stationary object is not applicable against the owner when the maneuver is under the control of a pilot.

**10. Same—**

The owner of a ship is not under duty to equip it with engines capable of counteracting an unexpected action on the part of the pilot in time to avoid injury to the property of third persons.

**11. Appeal and Error § 40i—**

In determining an exception to the granting of defendant's motion to nonsuit the province of the Supreme Court is solely to determine whether there is sufficient evidence to carry the case to the jury.

**12. Limitation of Actions § 16—**

Upon motion to nonsuit for that plaintiff's cause is barred by a specified statute of limitations, the burden is on plaintiff to show that its action was begun within the time allowed by law.

**13. Limitation of Actions § 11—**

Where plaintiff shows that shortly after the collision, proceedings were instituted in admiralty in the United States District Court, in which it was ordered that all suits arising out of the collision be stayed, that plaintiff filed its claim therein, and immediately after its claim was dismissed in the United States Court for want of jurisdiction, it instituted this action, plaintiff's evidence is sufficient to overrule the motion to nonsuit on the ground of the bar of the statute of limitations. G. S., 1-23 and 1-25.

APPEAL by plaintiff from *Williams, J.,* at December Term, 1945, of NEW HANOVER.   Reversed.

This was an action to recover damages for injury to the State Highway bridge spanning the Cape Fear River, near Wilmington, alleged to have been caused by the negligence of the defendant in the movement of its steamship *Severance.*

The former appeal in this case, reported in 225 N. C., 198, involved only a question of service of process.   On the trial following it was not controverted that in attempting to pass through the draw the ship collided with the fender piling erected in connection with the drawbridge, causing damages to structures in the amount of $9,950.   This occurred 23 November, 1940.

The plaintiff's evidence tended to show that the defendant desiring to move the ship from the anchorage basin in Wilmington to Navassa, several miles up the Cape Fear River, to unload a cargo of sulphur, requested the assistance of R. R. Stone, trading as Stone Towing Line. Pursuant thereto F. G. Dosher, a licensed pilot and docking master for Stone, "was sent to the *Severance* to accompany her up the river, and had complete charge of her navigation."   In connection with the operation Mr. Dosher used a Tug Stone No. 6, placed ahead of the *Severance* with a hawser running from the stern of the Tug to the bow bits of the *Severance,* 125 to 150 feet, but the ship moved under her own power. Dosher went on the bridge at 11 a.m., ordered anchor heaved up and caused the ship to move on her way.   The State Highway bridge was about a mile up stream.   The width of the draw was 120 feet and the channel before reaching the draw was 175 to 200 feet wide.   There was little wind, the tide was near low, water slack.   There had been a freshet up river, but it had passed.   The ship was 366 feet long and 53 feet beam.   As the ship approached the draw, at speed of two miles per hour, and about the length of the hawser away, it suddenly sheered to the left. As soon as the pilot saw the bow going that way he had the helm put hard right, but she did not respond and then he ordered the engine reversed, but "did not feel the engine or rudder take hold or start to pull back at all.   The ship had hit the fender before the wheel ever turned over."   It was then too late to use anchors, and the ship crashed into the fender piling.   The Tug, which was 85 feet long, 200 horsepower, observing the direction of the ship, attempted to pull it out of the sheer, but was unable to do so and the line parted.   The ship struck the pilings, received a hole in her bottom, and sank, but was later raised.

It appeared that the ship was an old English built vessel, turret type, with old type fore and aft compound engine.   Dosher testified, "When you reverse the engine before the engine will take hold to go astern it is necessary to rock that lever several times to pick up the water on the

wheel. It is a slow acting ship, several minutes slower than up-to-date engines. Neither the captain nor any member of the crew advised me it was equipped with this kind of an engine until afterward." Dosher had never piloted that type of vessel before. He said he knew she was a turret type ship but not her maneuverability; that he had heard since that they are clumsy, sluggish, slow handling ships; did not know its engine was the rocker type until afterward, and had not heard the *Severance* was a cranky ship. He further testified that if the captain had told him she was a cranky ship he would have used two tugs instead of one. By having a tug on the starboard quarter as well as the Stone 6 on the bow the sheer would have been prevented. These tugs when it started to sheer would have kept her straight and prevented the sheer.

The witness Debnam, an experienced master and pilot, testified he knew the *Severance* and had docked her many times; that she was a very old boat of an unusual type known as a turret ship; that "the *Severance* with a very small rudder, an old type ship, awkward, lazy, loggish—will not respond at times to what we expect."

Witness Cudworth, an experienced tug master and tug pilot, who had navigated the *Severance* on a few occasions, testified he found her a lazy, sluggish, loggy ship in maneuvering and steering; that she had taken different sheers at different times while he was navigating her; that on several occasions he had to drop anchor to break the sheers; that he had asked to be relieved of piloting the *Severance* because she was an awkward ship to handle.

Witness Peders testified that he piloted the *Severance* in and out of Charleston and up the Cape Fear River from the bar to Wilmington, and had difficulty in steering her. He said it was impossible to keep her straight, there was no way of telling when she was going to take one of those sheers; that he did not know what sort of steering apparatus she had; knew she had chains leading aft of the quarters. He further testified that when she arrived in Wilmington he made the statement she was the hardest steering ship he had ever known. "If there are any peculiarities general to the turret type vessel I don't know them." "It was impossible to keep her straight on her course." Witness Keith testified, in corroboration, that Capt. Peders said after he came off the *Severance* the day before the collision, "She was one of the meanest damn ships he ever piloted on to handle or steer."

Summons in this action was issued 26 January, 1944. The defendant pleaded the statute of limitations. It was made to appear, however, that shortly after the collision the owner of the cargo laden on board the *Severance* and the present defendant Diamond Steamship Transportation Corporation filed libel in admiralty *in personam* in the U. S. District Court against R. R. Stone, trading as Stone Towing Line.

The owner of the Tug Stone 6 intervened on a petition for limitation of liability. Thereupon it was ordered by the court that the institution and prosecution of all suits be stayed except in that proceeding, and directed that a monition issue against all persons claiming damages for injury to property occasioned by the collision, and citing them to present all claims to an appointed commissioner. The notice was served on plaintiff. The restraining order restrained the institution of any claim, suit or legal proceeding of any nature whatsoever in respect to any damages or injuries to property or destruction claimed to have arisen out of or resulted from or connected with the collision aforesaid, until the hearing and determination of the proceedings in the District Court. The plaintiff herein filed its claim for damages to the bridge against both the defendant and Stone. Thereafter in January, 1944, the U. S. Court entered an order dismissing the claim of the plaintiff, on the ground that the damage claimed was for an injury to a land structure and not within the jurisdiction of the U. S. Court in admiralty. Thereupon summons in this action in Superior Court of New Hanover County issued 26 January, 1944.

The defendant offered no evidence.

At the conclusion of plaintiff's evidence defendant's motion for judgment of nonsuit was allowed, and from judgment dismissing the action, plaintiff appealed.

*George B. Patton, General Counsel; and Isaac C. Wright, Special Counsel, for plaintiff, appellant.*

*Rountree & Rountree for defendant, appellee.*

DEVIN, J. The plaintiff, appellant, assigns error in the ruling of the trial court in allowing defendant's motion for judgment of nonsuit at the close of the plaintiff's evidence. The motion was based on two grounds, (1) that the plaintiff's evidence was insufficient to show negligence on the part of the defendant, and (2) that plaintiff's action was barred by the statute of limitations, G. S., 1-52.

1. Determination of the propriety of the motion on the ground of failure of proof requires that the evidence offered be considered in the light most favorable for the plaintiff. On demurrer to the evidence the plaintiff is entitled to the benefit of every fact and inference of fact pertaining to the question involved which reasonably may be deduced from the evidence. *Plumidies v. Smith*, 222 N. C., 326, 22 S. E. (2d), 713.

Applying this rule the decision depends on whether there was any substantial evidence, competent to be considered, of negligence on the part of the defendant proximately causing or contributing to the injury

alleged. Of primary significance in the law of negligence is the failure to perform some duty which under the circumstances one owes to another as result of which the latter sustains an injury. As was said in *Richmond v. Warren*, 307 Mass., 483: "There can be negligence only with relation to a duty to exercise care."

Out of the circumstances shown by the evidence in this case certain relationships and corresponding duties and obligations are made to appear.

The movement of the steamship *Severance* which collided with plaintiff's structures was controlled by Mr. Dosher, the docking master and pilot employed by the Stone Towing Line. The contract by which the services of Dosher were engaged was not merely a contract of towage but also of pilotage. As such, Dosher was in complete command of the navigation of the ship. In undertaking at the request of the defendant to pilot the ship up the river and through the draw of the highway bridge, Dosher, representing the Stone Towing Line, was exercising an independent employment. *The West Eldara*, 104 F. (2d), 670; *Young v. Lumber Co.*, 147 N. C., 26, 60 S. E., 654. He testified he had full charge of the maneuver, and there is no evidence the defendant had right to or exercised control over the steering and handling of the vessel on this occasion. *The Oregon*, 158 U. S., 186; *Union Shipping and Trading Co. v. U. S.*, 127 F. (2d), 771. But the employment of an independent contractor did not absolve the defendant of liability if the injury complained of was proximately caused by its own negligence, or its own negligence co-operated with the negligence of the independent contractor. 27 A. J., 509; 30 A. L. R., 1508; 44 A. L. R., 962. The doctrine of the employer's non-liability for the acts of an independent contractor does not apply when the circumstances are such as to impose a duty on the part of the employer to exercise due care to avoid injury. *Evans v. Lumber Co.*, 174 N. C., 31, 93 S. E., 430; *Davis v. Summerfield*, 133 N. C., 325, 45 S. E., 654. The employer is answerable for injuries occasioned by nonperformance of duties which are incidental to the work and which have not devolved upon the contractor; or where the employer's negligence co-operates with that of the contractor, *Hunter v. R. R.*, 152 N. C., 682, 68 S. E., 237; or where the employer's act or failure to act was negligent when tested by the standard of reasonable care, *Beninghoff v. Futterer*, 176 Ill. App., 579, 30 A. L. R., 1508; or he has furnished dangerous appliances for the use of the contractor. *Brady v. Jay*, 111 La., 1071. Notwithstanding the employment of a licensed and experienced pilot, it was still obligatory upon the defendant, in the performance of its duty to exercise due care to avoid an injury to others which reasonably could have been foreseen, to advise the pilot of dangers in the movement of so large a ship through a narrow draw, dangers due to

faulty maneuverability, of which it had knowledge and of which the pilot was apparently unaware.

While the defendant had the right to assume that the pilot was familiar with the river and its waters, and also that he knew how to handle and steer turret type vessels, it could not, under the circumstances here appearing, reasonably impute to the pilot knowledge of the peculiarities and faulty equipment of the *Severance,* which imported danger when navigated in narrow waters, peculiarities which were not common to all vessels of that type.

In view of the unpredictable tendency of the ship to sheer and the difficulty of keeping her on her course, together with the unfamiliarity of the pilot with these characteristics, the evidence would seem to furnish the basis for the imposition of a duty on the defendant, before attempting to move the ship through the draw, to advise the pilot of these circumstances, so that he might take measures to execute the maneuver with safety. He testified if he had been told she was a cranky ship he would have used another tug in the manner described, and thus prevented the sheer. There is evidence that turret type vessels as a rule were awkward, slow and loggish, but there is some evidence here that the tendency of the ship suddenly to change direction without apparent reason was peculiar to the *Severance.* The pilot who brought her up the Cape Fear River from the bar to Wilmington characterized her as the hardest steering ship he had ever known. In his picturesque language, "she was one of the meanest damn ships he ever piloted on to handle or steer." Another pilot who had had experience with her had asked to be relieved of handling her. The testimony of the pilot on the occasion of the collision that the failure of the ship to respond to the helm, or the engine to take hold upon his order to reverse, would seem to suggest the inference of defective equipment or fault in the defendant's engine room. The plaintiff's evidence, which alone we are considering, does not warrant the definite conclusion as a matter of law that the collision was solely due to the negligence of the pilot.

The authority of the master of a vessel is not in complete abeyance while a pilot is in the discharge of his functions. *Union Shipping & Trading Co. v. U. S., supra.* The ship owner is not exempt from liability where his negligence or that of his agent proximately contributes to the injury, *Matheson v. Norfolk & North American Steamshipping,* 73 F. (2d), 177; and where the master is aware that under the direction of the pilot the ship is being operated so that it will likely cause injury to another, a duty devolves upon the master to give timely warning. *Jure v. United Fruit Co.,* 6 F. (2d), 6; *The Gypsum King,* 279 F., 297. The ship owner has the duty to take measures which are apparently necessary to prevent injury which in the exercise of due care could have been fore-

seen. *Robins Dry Dock & Repair Co. v. Navigazione Libera Triestina,* 32 F. (2d), 209; *Orhanovich v. Steam Tug America,* 4 F., 337.

The principle that the collision between a vessel in motion and a stationary object raises the presumption of negligence applies to the one in control of the movement, and, in the absence of evidence that defendant was in actual control of the navigation of the *Severance* at the time of the collision, this rule does not aid the plaintiff here. *The Cromwell,* 259 F., 166; *U. S. v. Norfolk-Berkley Bridge Corp.,* 29 F. (2d), 115. Nor may it be said that it was the duty of the owner to equip its ship with engines capable of such quick action as to be able to counteract unexpected action on the part of the Towing Company's pilot. *Calzavaro v. Planet S. S. Corp.,* 31 F. (2d), 885.

We think there was some competent evidence to support the plaintiff's allegation of negligence on the part of the defendant in the respects pointed out, and that the plaintiff was entitled to have its case submitted to the jury under appropriate instructions. In discussing the effect of pertinent portions of the testimony offered by plaintiff, we express no opinion as to the credibility of the testimony or the weight to be given it. Our only province in the premises is to determine whether there be competent evidence sufficient to carry the case to the jury, under the rule in this jurisdiction.

We note that in the U. S. District Court in the case in which the owners of the *Severance* and of the cargo sought recovery against R. R. Stone, trading as Stone Towing Line, the decision in favor of the defendant was reversed on appeal by the Circuit Court of Appeals, Fourth Circuit (*The Severance,* 152 F. [2d], 916). In the opinion in that case by *Circuit Judge Dobie* it is said: "Appellees attempt to explain the collision on the ground that the *Severance* was a cranky vessel and difficult to handle, that her engine response was faulty and her steering gear defective. We are not impressed by these contentions. . . . The testimony of Captains Dosher, Peders and Cudworth is far from convincing. This was more than offset by the testimony of the officers and crew of the *Severance.*" It will be noted that this decision was based on testimony heard in the Federal Court and not on that appearing in the record here, and that in that jurisdiction in admiralty the court determined the facts without a jury. Here we consider only the question whether there was any competent evidence of negligence on the part of the ship owner, the defendant here.

2. Under the pleadings the burden was on the plaintiff to show that its action was begun within the time allowed by law. This, we think, it has done by showing that shortly after the injury was sustained it was enjoined by the U. S. Court from proceeding except in that jurisdiction; that it there filed its claim, promptly, against this defendant; that as

soon as its claim was dismissed from that court for want of jurisdiction (*Louis-Dreyfus v. Paterson Steamships,* 43 F. [2d], 824), it caused summons to issue in the present action on the same claim.

We think under the rule in this jurisdiction based upon our statutes, G. S., 1-23 and 1-25, the plaintiff's action was brought in time and was not barred by the statute of limitations. *Blades v. R. R.,* 218 N. C., 702, 12 S. E. (2d), 553; *Harris v. Davenport,* 132 N. C., 697, 44 S. E., 406.

For the reasons stated we think the motion for the judgment of nonsuit was improvidently allowed, and that the judgment of dismissing the action must be

Reversed.