THE ROWAN COUNTY BOARD OF EDUCATION, A PUBLIC BODY POLITIC v.
UNITED STATES GYPSUM CO.

No. 8719SC24

(Filed 15 September 1987)

1. **Limitation of Actions § 2— sovereign purpose—statute of limitations inapplicable to State**

    The doctrine of *nullum tempus occurrit regi* is not *totally* abrogated in North Carolina, and when the State or its political agencies are pursuing a sovereign (or governmental) purpose, as opposed to a proprietary purpose, statutes of limitation or statutes of repose do *not* apply *unless* the statute expressly includes the State.

2. **Limitation of Actions § 2; Schools § 6— asbestos in plaster in schools—action to recover cost of removal—governmental function—action not barred by statute of limitations**

    Plaintiff's action to recover lost tax dollars expended in the preservation and maintenance of school property and necessitated by a potential health hazard (asbestos in acoustical plaster) to school personnel and children was a governmental function exercised in pursuit of a sovereign purpose for the public good on behalf of the State, and the action therefore was not barred by the statute of limitations.

APPEAL by plaintiff from *John, Judge*. Order and Judgment entered 10 October 1986 in Superior Court, ROWAN County. Heard in the Court of Appeals 3 June 1987.

This is a suit brought by plaintiff, the Rowan County Board of Education (the Board), to recover monies spent removing asbestos manufactured by defendant, United States Gypsum Co. (Gypsum), from plaintiff's schools. Defendant was granted summary judgment on the grounds that plaintiff's claims were barred by the statutes of limitation. We reverse.

The record on appeal shows that between 1950-1961 the Board performed construction on seven of its area schools. In the 1980's the Board discovered that acoustical plaster, manufactured by Gypsum and used by the Board in its school construction projects, contained asbestos. In July 1985 the Board brought suit against Gypsum to recover costs incurred for removal of the asbestos from the seven area schools and to require Gypsum to indemnify the Board from any claims arising out of or related to exposure to the asbestos in the schools.

Gypsum moved for summary judgment contending, in pertinent part, that the applicable statute of limitation had run on each of the Board's claims. The trial court granted Gypsum's motion. From the judgment and order dismissing its case, plaintiff appeals.

*Woodson, Busby, Sayers, Lawther & Bridges, by Donald D. Sayers; Daniel A. Speights; Blatt & Fales, by Edward J. Westbrook and J. Anderson Berly, III, attorneys for plaintiff-appellant.*

*Kennedy Covington Lobdell & Hickman, by William C. Livingston; Morgan, Lewis & Bockius, by E. Barclay Cale, Jr., attorneys for defendant-appellee.*

ORR, Judge.

I.

On appeal the Board contends that statutes of limitation are not applicable to it, as an agent for the State; therefore, the trial court improperly granted Gypsum's motion for summary judgment.

> The purpose of summary judgment . . . [is] to bring litigation to an early decision on the merits without the delay and expense of a trial where it can be readily demonstrated that no material facts are in issue. Two types of cases are involved: (a) Those where a claim or defense is utterly baseless in fact, and (b) those where only a question of law on the indisputable facts is in controversy and it can be appropriately decided without full exposure of trial.

*McNair v. Boyette,* 282 N.C. 230, 234-35, 192 S.E. 2d 457, 460 (1972); *Harris v. Walden,* 314 N.C. 284, 333 S.E. 2d 254 (1985).

A defendant may meet the burden of proof required for obtaining summary judgment by showing that the plaintiff "cannot surmount an affirmative defense which would bar the claim." *Bernick v. Jurden,* 306 N.C. 435, 441, 293 S.E. 2d 405, 409 (1982); *Dickens v. Puryear,* 302 N.C. 437, 276 S.E. 2d 325 (1981). The statute of limitations, if properly pled and if all the facts with reference thereto are admitted or established, may act as an affirmative defense, barring plaintiff's claims and entitling defendant to summary judgment as a matter of law. *Pembee Mfg. Corp.*

*v. Cape Fear Constr. Co.*, 313 N.C. 488, 329 S.E. 2d 350 (1985); *Brantley v. Dunstan*, 10 N.C. App. 706, 179 S.E. 2d 878 (1971); N.C.G.S. § 1A-1, Rule 56 (1983).

The dispositive question on appeal, however, is not whether plaintiff brought its action before the running of the time limitations, but whether the statutes of limitation may serve as a defense to plaintiff's action.

[1]  The legal premise upon which the Board bases its contention that statutes of limitation are not applicable to it, is the common law maxim, *"nullum tempus occurrit regi,"* which states "the sovereign is exempt from the consequences of its laches, and from the operation of statutes of limitations." *Guaranty Trust Co. of New York v. United States*, 304 U.S. 126, 132, 82 L.Ed. 1224, 1227 (1938).

> '*Vigilantibus sed non dormientibus jura subveniunt*' is a rule for the subject, but *nullum tempus occurrit regi*, is the King's plea. For there is no reason that he should suffer by the negligence of his officers, or by their contracts or combinations with the adverse party. (5 Bac. Ab., 562, Hob. 347.) Therefore the King is not bound by any statute of Limitations, unless it is made by express words to extend to him. (5 Bac. Ab. 461, Plo. 244.) But the rule of *nullum tempus occurrit regi*, is subject to various exceptions, both at common law and by statute . . . . It seems that the rule *nullum tempus*, etc., is applicable to the States where not restrained by some constitutional provision, legislative enactment, or principle of the common law. (*Kemp v. The Commonwealth*, 1 H. & M., 85.)

*Armstrong v. Dalton*, 15 N.C. 568, 569 (1834).

Defendant contends that the North Carolina Legislature abrogated *nullum tempus occurrit regi* and ended the State's immunity by enacting what is now N.C.G.S. § 1-30.

In North Carolina prior to 1868 there was no statutory restraint upon the doctrine of *nullum tempus occurrit regi* and it was applicable to the sovereign state. However, in 1868 during Reconstruction, the legislature adopted a new Code of Civil Procedure for the State and included Section 1-30 (formerly in reverse order, C.S., sec. 420, Revisal, sec. 375, the Code sec. 159 and C.C.P., sec. 38), which provides: "The limitations prescribed by

law apply to civil actions brought in the name of the State, or for its benefit, in the same manner as to actions by or for the benefit of private parties." No legislative history has been found to explain or assist in the interpretation of this section, nor do any of the cases following its adoption shed light on the scope or purpose behind the enactment. In fact, in the cases that followed its adoption Justice Seawell pointed out, "the course of decision has not been entirely consistent . . . ." *Guilford County v. Hampton*, 224 N.C. 817, 818, 32 S.E. 2d 606, 607 (1945). Recognizing the judicial disparity, Justice Seawell continued and said: "We do not attempt to reconcile conflicting authority with regard to the application of the maxim cited, or to follow it further into its ramifications, which might lead only to unprofitable differences." *Id.* at 819, 32 S.E. 2d at 608.

A review of these opinions clearly discloses that N.C.G.S. § 1-30 was intended to abrogate to some extent the maxim "*nullum tempus occurrit regi*"; it is unclear, however, whether the statute was intended to abrogate the maxim in whole or in part.

The Supreme Court's opinions, spanning a period of 119 years and written by greatly divergent courts, are apparently divided into two lines of authority. The first line may be interpreted as holding that N.C.G.S. § 1-30 abrogated the maxim in its entirety. Under this interpretation, the State is to be considered the same as a private citizen when applying a time limitation, unless the pertinent statute contains an express statement *excluding* the State from its strictures.

The first case to address the issue was *Furman v. Timberlake*, 93 N.C. 66 (1885), decided seventeen years after the enactment of the statute. In *Furman* the Court stated that *nullum tempus occurrit regi* was "a maxim which is said to have been founded upon *the great public* policy of preserving the public rights, revenues, and property from injury and loss by the negligence of public officers. But the maxim is no longer in force in this State, having been abrogated by the provisions of The Code, sec. 159 [now N.C.G.S. § 1-30]." *Furman*, 93 N.C. at 67 (emphasis supplied). It is important to note that this case, upon which others have relied, involved a suit by a former Clerk of Court against the current Clerk of Court for monies allegedly earned by the former Clerk while in office.

The next case, *Hospital v. Fountain*, 129 N.C. 90, 39 S.E. 734 (1901), involved a suit by the State Hospital to recover from a patient's guardian money spent by the hospital for the patient's care. The Court held that the hospital's action was barred in part by the statute of limitations under Section 159 (now N.C.G.S. § 1-30).

In *Threadgill v. Wadesboro*, 170 N.C. 641, 87 S.E. 521 (1916), the plaintiff sued to recover damages from the city for trespass on plaintiff's property. The Court made reference to *nullum tempus occurrit regi*, stating that it "no longer obtains here . . . ." *Id.* at 643, 87 S.E. at 522. In support of this conclusion the *Threadgill* Court cited *Furman*, and *Wilmington v. Cronly*, 122 N.C. 388, 30 S.E. 9 (1898). However, in *Wilmington* the Supreme Court said: "No statute of limitations runs against the sovereign unless it is *expressly* named therein." 122 N.C. at 389, 30 S.E. at 11 (emphasis added).

In *Tillery v. Lumber Co.*, 172 N.C. 296, 90 S.E. 196 (1916), a Board of Education sued to recover damages for trees cut on property owned by it. When defendant raised the statute of limitations defense, plaintiff argued that time limitations could not run against it. The Court held for defendant and cited *Threadgill* for the proposition that *nullum tempus occurrit regi* has been abrogated, "and that now, at least in some respects, time does run against the State." *Id.* at 298, 90 S.E. at 197.

*Manning v. R. R.*, 188 N.C. 648, 125 S.E. 555 (1924), referencing C.S. 420 (now N.C.G.S. § 1-30), is the last case in which the Supreme Court appears to conclude that the maxim has been abrogated by the statute, stating:

> The Court has construed this section to mean that the maxim has been abrogated and is not in force in this State unless the statute applicable to or controlling the subject otherwise provides. [Citing *Furman v. Timberlake* and *Threadgill v. Wadesboro.*]

188 N.C. at 665, 125 S.E. at 565. However, the dissent in *Raleigh v. Bank*, 223 N.C. 286, 26 S.E. 2d 573 (1943), noted when considering the *Manning* decision:

> this statement in the *Manning case, supra*, is predicated on the statements in the *Furman* and *Threadgill cases* . . . . But

reference to the *Furman* and *Threadgill cases, supra,* shows that the question was not before the Court in either case. And even as a *dictum* the principle as there stated is challenged by other and later decisions. In fact, in the *Manning case, supra,* it is stated: 'Whether a distinction may be found in the public policy of preserving the public revenues .'. . or in the statute controlling the subject, we need not decide.'

223 N.C. at 305, 26 S.E. 2d at 584-85.

Since *Manning* several cases have skirted around the question but none have directly addressed this issue. At best, from defendant's point of view, these later cases appear to acknowledge that a statute of limitations can run against the State; but, in each case the cause of action was filed in a timely fashion. *See Trustees of Rowan Tech v. Hammond Assoc.,* 313 N.C. 230, 328 S.E. 2d 274 (1985); *Ports Authority v. Roofing Co.,* 294 N.C. 73, 240 S.E. 2d 345 (1978); *Highway Comm. v. Transportation Corp.,* 226 N.C. 371, 38 S.E. 2d 214 (1946).

We next examine a line of tax cases which take an opposite tack from those previously examined. In these cases the Court follows the law as stated in *Wilmington v. Cronly,* 122 N.C. 383, 30 S.E. 9. There the Court said, "It needs no citation of authority to show that statutes of limitation never apply to the sovereign unless expressly named therein—*nullum tempus occurrit regi* . . . ." *Id.* at 387, 30 S.E. at 10.

The next case reaching this conclusion was *New Hanover County v. Whiteman,* 190 N.C. 332, 129 S.E. 808 (1925), another suit to collect taxes assessed against a defendant's land. In *New Hanover County,* the Court cited *Wilmington v. Cronly,* 122 N.C. 383, 30 S.E. 9, and reiterated that "[s]tatutes of limitations never apply to the sovereign, unless expressly named therein." *New Hanover County v. Whiteman,* 190 N.C. at 334, 129 S.E. at 809. *See also Pipeline Co. v. Clayton, Comr. of Revenue,* 275 N.C. 215, 166 S.E. 2d 671 (1969); *Fertilizer Co. v. Gill, Comr. of Revenue,* 225 N.C. 426, 35 S.E. 2d 275 (1945); *Charlotte v. Kavanaugh,* 221 N.C. 259, 20 S.E. 2d 97 (1942).

We thus have two distinct impressions as to what the law is in North Carolina. Under the line of cases relied upon by defend-

ant, N.C.G.S. § 1-30 totally abrogates the doctrine of *nullum tempus occurrit regi*; consequently the applicable statutes of limitation run against the plaintiff in the case *sub judice*, barring its claims. On the other hand, plaintiff relies on the second line of cases which hold that a statute of limitations runs against the State *only* if the State is named in that particular statute of limitations. Since the statutes of limitation in question do *not* name the State, plaintiff contends it is not barred from bringing this suit. Defendant contends that the distinction between the two lines of cases is that the second line requiring a statute of limitation to specifically name the State, occurrs only in tax cases. We disagree with that distinction.

Instead, we are compelled to adopt the reasoning set forth in a series of cases beginning with *Charlotte v. Kavanaugh*, 221 N.C. 259, 20 S.E. 2d 97, as the basis for reconciling the two lines of authority. In *Charlotte*, the Court, after examining the prior conflicting decisions and N.C.G.S. § 420 (now N.C.G.S. § 1-30), unanimously concluded that a statute of limitations will apply to the state and political subdivisions thereof, *"when the action is not brought in the capacity of its sovereignty." Charlotte*, 221 N.C. at 266, 20 S.E. 2d at 101 (emphasis added). Justice Denny, speaking for the Court said: "The principle laid down and oft repeated in our decisons that 'No statute of limitations runs against the sovereign unless it is expressly named therein,' is sound . . . ." *Id.*

In *Raleigh v. Bank*, 223 N.C. 286, 26 S.E. 2d 573 the Court carried forward this line of reasoning, stating:

> It is contended by the plaintiff that the maxim *nullum tempus occurrit regi* should be applied here, and that the City of Raleigh, exercising the power of sovereignty, should not be barred by the lapse of time in the effort to enforce the lien of a special assessment imposed for a public improvement.

> While this ancient maxim has lost much of its vigor by the erosions of time, and by legislative enactment, it is still regarded as the expression of a sound principle of government applicable to actions to enforce the *sovereign rights* of the State. Notwithstanding the inclusive provisions of sec. 420 of the Consolidated Statutes . . . it has been uniformly

held that no statute of limitations runs against the State, unless it is expressly named therein.

223 N.C. at 293, 26 S.E. 2d at 577 (emphasis added and citations omitted); *State v. West*, 293 N.C. 18, 235 S.E. 2d 150 (1977) (*quoting Raleigh v. Bank* with approval in dicta).

Finally, in *Guilford County v. Hampton*, 224 N.C. 817, 32 S.E. 2d 606, the Court held that: "Uniformly a distinction has been observed between actions brought by the State, counties and municipalities in their *sovereign capacity*, and those brought with respect to *proprietary demands*." 224 N.C. at 820, 32 S.E. 2d at 608 (emphasis added).

We believe this distinction, between sovereign and proprietary demands, is the deciding factor when reconciling the divergent cases upon this subject. Accordingly, we hold that statutes of limitation will run against the State, when its purpose is proprietary, unless it is expressly excluded therein. Statutes of limitation will not run against the State when its purpose is governmental, unless the State is expressly included therein.

Therefore, we conclude that *nullum tempus occurrit regi* is not *totally* abrogated in North Carolina, and hold that when the State or its political agencies are pursuing a sovereign (or governmental) purpose, as opposed to a proprietary purpose, statutes of limitation or statutes of repose do *not* apply *unless* the statute expressly includes the State.

[2]   We now turn our attention to the ultimate determination — whether this suit by plaintiff involves a sovereign power or right in pursuit of a governmental purpose rather than a proprietary purpose.

The sovereign immunity held by the State is extended to all State agencies acting on the State's behalf. *Guthrie v. State Ports Authority*, 307 N.C. 522, 299 S.E. 2d 618 (1983); *Stanley v. Retirement and Health Benefits Division*, 66 N.C. App. 122, 310 S.E. 2d 637, *disc. rev. denied and appeal dismissed*, 310 N.C. 626, 315 S.E. 2d 692 (1984).

Furthermore, it is undisputed that a city or county board of education is "a governmental agency, created by statute, for the purpose of performing governmental functions." *Benton v. Board*

*of Education,* 201 N.C. 653, 656, 161 S.E. 96, 97 (1931); *Board of Education v. Allen,* 243 N.C. 520, 91 S.E. 2d 180 (1956); *Kirby v. Board of Education,* 230 N.C. 619, 55 S.E. 2d 322 (1949); *Overcash v. Statesville City Bd. of Educ.,* 83 N.C. App. 21, 348 S.E. 2d 524 (1986).

A political subdivision of the State is acting in its governmental capacity, "[w]hile acting 'in behalf of the State' in promoting or protecting the health, safety, security or general welfare of its citizens . . . ." *Rhodes v. Asheville,* 230 N.C. 134, 137, 52 S.E. 2d 371, 373 (1949).

Under Art. IX, Sec. 6 of the North Carolina Constitution it is set out that revenues ". . . shall be faithfully appropriated and used exclusively for . . . maintaining . . . free public schools." In addition to this constitutional mandate, N.C.G.S. § 115C-524(b) states in part:

> It shall be the duty of local boards of education and tax-levying authorities, in order to safeguard the investment made in public schools, to keep all school buildings in good repair to the end that all public school property shall be taken care of and be at all times in proper condition for use.

N.C.G.S. § 115C-44(a) also provides in part:

> A local board of education shall institute all actions, suits, or proceedings against officers, persons, or corporations, or their sureties, for the recovery, preservation, and application of all money or property which may be due to or should be applied to the support and maintenance of the schools . . . .

Public revenues and property play an essential part in the present case. The Rowan County Board of Education expended tax dollars to implement necessary construction and repairs to seven public schools. As part of this construction, the Board, in good faith, purchased building materials manufactured by Gypsum for the express purpose of utilizing them on public property and in public schools. Subsequently, the Board learned that asbestos, a substance to which exposure may pose a serious health hazard, was present in the materials used in the prior construction, and in conformity with N.C.G.S. § 115C-524(b), requiring maintenance of safe schools, removed the asbestos laden materi-

als. The Board funded the removal, as it did the initial installation, with tax dollars allocated for education.

We conclude that plaintiff's action to recover lost tax dollars, expended in the preservation and maintenance of school property and necessitated by a potential health hazard to our school personnel and children, is a governmental function exercised in pursuit of a sovereign purpose for the public good on behalf of the State. *Koontz v. City of Winston-Salem*, 280 N.C. 513, 186 S.E. 2d 897, *petition to rehear denied*, 281 N.C. 516, --- S.E. 2d --- (1972); *Seibold v. Library*, 264 N.C. 360, 141 S.E. 2d 519 (1965); *Carter v. Greensboro*, 249 N.C. 328, 106 S.E. 2d 564 (1959); *Rhodes v. Asheville*, 230 N.C. 134, 52 S.E. 2d 371.

As previously pointed out, the maxim of *nullum tempus occurrit regi* has "lost much of its vigor by the erosions of time . . . ." *Raleigh v. Bank*, 223 N.C. at 293, 26 S.E. 2d at 577. However, the ancient maxim and its historic public policy of preserving the public rights, revenues and property, still has a limited place in this modern age.

This Court is unpersuaded by defendant's arguments contending that the school board is precluded from pursuing its constitutional and statutory duty to preserve tax revenues and safeguard the property of our North Carolina schools. Instead, this Court is convinced that the Rowan County School Board acted in its sovereign capacity in bringing this action to recover tax dollars spent in the necessary removal of a potential health hazard from its schools, and therefore its action is not barred by the statutes of limitation as contended by Gypsum.

The decision of the trial court in granting defendant's motion for summary judgment is therefore reversed.

Reversed.

Chief Judge HEDRICK and Judge PHILLIPS concur.