THE ROWAN COUNTY BOARD OF EDUCATION, a Public Body Politic, Plain-
tiff v. UNITED STATES GYPSUM COMPANY, Defendant

No. 9019SC663

(Filed 2 July 1991)

1. Fraud § 12.1 (NCI3d)— asbestos—acoustical ceiling plaster—
action for fraud—directed verdict denied

The trial court correctly denied defendant's motions for
a directed verdict and judgment n.o.v. as to plaintiff school
system's claims for fraud, misrepresentation and punitive
damages where plaintiff offered evidence that defendant had
acquired a product, added asbestos to the original formula,
and sold it under the name Sabinite from shortly after 1930
until 1964; defendant developed and marketed in 1952-53 another
acoustical plaster called Audicote which also contained asbestos;
defendant and ten other companies agreed in 1936 to under-
write certain experiments at the Saranac Laboratory; the agree-
ment provided that the results would be the property of those
advancing the required funds, who would determine whether
the results would be made public; the report of the laboratory
director, Gardner, discussed the question of cancer in 1943;
a draft of the report was prepared in 1948 and submitted
to the sponsoring companies; the references to cancer, tumors,
and occupational standards were removed prior to publication;
the published version of the report was characterized as a
complete survey of the entire experimental investigation; both
Sabinite and Audicote exhibited bonding and dusting problems
which were not disclosed; brochures on the products were
routinely included in a catalog to which architects refer in
specifying products for a building; the brochures did not men-
tion the potential hazards of asbestos or the dusting problems;
and the architect who designed the high school testified that
he relied on that catalog and on manufacturer's representatives
in specifying products. A manufacturer's concealment of infor-
mation concerning significant health risks is not purged by
the manufacturer dealing only with middlemen or agents and
not with the ultimate purchasers or users. A jury could
reasonably find that defendant defrauded plaintiff with respect
to the high school, and the jury's finding of fraud as to any
of the schools was sufficient to support punitive damages.

Am Jur 2d, Fraud and Deceit §§ 159, 306, 307, 316, 319, 347.

**2. Fraud § 11 (NCI3d) — asbestos — concealment of hazard — post-sale evidence — admissible**

The trial court did not err by admitting post-sale evidence in an action for fraud alleging that the manufacturer of acoustical ceiling plaster had concealed information concerning asbestos. Much of the post-sale evidence went not to knowledge but to the nature of soft acoustical plaster containing asbestos; subsequent acts and conduct are competent in fraud claims on the issue of original intent and purpose; and post-sale removal of asbestos from defendant's own plants was relevant to the issue of property contamination from asbestos.

**Am Jur 2d, Fraud and Deceit § 241.**

**3. Evidence § 30 (NCI3d) — asbestos — fraudulent misrepresentation — documents — admissible**

The trial court properly admitted documents relating to experiments between 1930 and 1943 in an action for fraudulent concealment of the hazards of asbestos where it appears that defendant stipulated to the authenticity of at least some of the exhibits and, even in the absence of stipulation, no suspicion concerning authenticity was raised by the documents' condition or internal consistency, the archival locations were logical for authentic documents, and the documents had been in existence for more than 20 years. Once the documents were authenticated, evidence in the documents was admissible pursuant to the hearsay exception for ancient documents. N.C.G.S. § 8C-1, Rules 901 and 803(16).

**Am Jur 2d, Evidence §§ 823, 825.**

**4. Appeal and Error § 341 (NCI4th) — expert testimony — inadequate assignment of error**

An assignment of error was inadequate to preserve alleged error for review where defendant's assignment of error to certain expert testimony referred to 29 pages inclusively, encompassing testimony on at least 12 documents or letters. Defendant failed to specify which of the documents was at issue or how testimony about any particular document violated the hearsay rule. North Carolina Rules of Appellate Procedure, Rule 10.

**Am Jur 2d, Appeal and Error §§ 658, 670.**

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[103 N.C. App. 288 (1991)]

5. **Appeal and Error § 147 (NCI4th)— expert witnesses—cross-examination—learned treatises—assignment of error—not proper**

Defendant's assignments of error to the cross-examination of its expert witnesses with learned treatises were not properly presented where defendant's objections at trial were not on the grounds assigned as error on appeal. N.C.G.S. § 8C-1, Rule 803(18); N.C. Rules of Appellate Procedure, Rule 10(b)(1).

**Am Jur 2d, Appeal and Error § 670.**

6. **Appeal and Error § 147 (NCI4th)— asbestos—evidence of comparative risk excluded—no offer of proof—discretionary authority to exclude**

There was no error in an action for fraudulently concealing the risks of asbestos in ceiling plaster from the exclusion of defendant's evidence concerning comparative risk where there was no offer of proof concerning part of the evidence, and the trial judge was well within his discretionary authority in excluding the remaining portion on the grounds that its probative value was substantially outweighed by the danger of confusion of the issues, misleading the jury, or by undue delay or waste of time. N.C.G.S. § 8C-1, Rule 403.

**Am Jur 2d, Appeal and Error § 604.**

7. **Fraud § 13 (NCI3d)— asbestos—concealment of risk—requested instructions—no error**

The trial court did not err in its instructions to the jury in an action for fraudulently concealing the risks of asbestos when the instructions are reviewed in light of the general principles that the instructions are reviewed contextually and that the refusal to give requested instructions is not error when the instructions given fully and fairly present the issues.

**Am Jur 2d, Fraud and Deceit §§ 483, 484; Trial § 592.**

Judge GREENE concurs in part and dissents in part.

APPEAL by defendant from Judgment entered 26 January 1990 and Order entered 14 February 1990 by *Judge Edward K. Washington* in ROWAN County Superior Court. Heard in the Court of Appeals 14 December 1990.

**ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.**

[103 N.C. App. 288 (1991)]

*Ness, Motley, Loadholt, Richardson & Poole, by Edward J. Westbrook; and Woodson, Linn, Sayers, Lawther, Short & Wagoner, by Donald D. Sayers, for plaintiff appellee.*

*Morgan, Lewis & Bockius, by Peter J. Lynch and Rebecca J. Slaughter; and Kennedy, Covington, Lobdell & Hickman, by William C. Livingston and Raymond E. Owens, Jr., for defendant appellant.*

COZORT, Judge.

On 30 July 1985, plaintiff Rowan County Board of Education (Rowan) brought suit against defendant United States Gypsum Company (Gypsum). Rowan sought compensatory and punitive damages related to the removal from various schools of acoustical ceiling plaster containing asbestos. After a three-week trial the jury awarded Rowan $812,984.21 in compensatory damages and $1,000,000.00 in punitive damages, and the court entered judgment in those amounts. From that judgment and the trial court's denial of its motion for judgment notwithstanding the verdict, Gypsum appealed. We find no prejudicial error.

In 1980 communications and publications from the Environmental Protection Agency (EPA) and the North Carolina Department of Public Instruction alerted Rowan officials to the dangers posed by certain construction materials containing asbestos. Rowan officials received a number of documents dealing with asbestos, including an EPA publication which contained the following warnings:

> EPA and the scientific community believe that any exposure to asbestos involves some health risks. No safe level of exposure or threshold exposure level has been established. . . .
>
> * * * *
>
> . . . The school population is very active. Certain asbestos-containing materials can be damaged during school activities and as a result of the capricious school behavior of students. When the material is damaged, asbestos fibers are released and exposure can occur.

After consulting with engineers, an industrial hygienist, members of a gubernatorially appointed "asbestos task force," and an architect, Rowan officials decided to remove from county schools the ceiling materials containing asbestos. The removal process began

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[103 N.C. App. 288 (1991)]

in 1983. In 1983 and 1984 Gypsum took core samples from the ceilings of Rowan schools. Before the removal process began, Rowan offered Gypsum the opportunity to perform air sample tests in the schools involved; Gypsum declined.

When Rowan brought suit in July 1985, its complaint included eight claims. Rowan eventually withdrew five of those. Three claims were tried before a jury: fraud and misrepresentation, negligence, and breach of implied warranty. On 18 June 1986, Gypsum moved for summary judgment on the grounds that all of Rowan's claims were barred by statutes of limitation. That motion was granted, but, reversing the trial court, this Court held that the action was not barred. *Rowan County Bd. of Educ. v. U.S. Gypsum*, 87 N.C. App. 106, 115, 359 S.E.2d 814, 820, *disc. review denied*, 321 N.C. 298, 362 S.E.2d 782 (1987).

Pursuant to special commission the case was tried before Judge Edward K. Washington from 3 January to 26 January 1990. At trial Gypsum contended, *inter alia*, that Rowan could not carry its burden of proving that Gypsum had manufactured the ceiling plaster in the schools at issue. At the close of Rowan's case in chief, the trial court granted Gypsum's motion for a directed verdict on all claims as to Cleveland Elementary School and Corriher-Lipe Junior High School. As to all schools, the court granted Gypsum a directed verdict on the claim for breach of implied warranty of merchantability. At the close of all evidence the court granted Gypsum a directed verdict "as to the breach of implied warranty of fitness for a particular purpose" and "as to gross negligence." On the remaining claims the court denied Gypsum's motion for a directed verdict.

On the issues submitted to it, the jury returned a verdict finding (1) that two of Gypsum's acoustical plasters containing asbestos were installed in Rowan's schools (Sabinite in Granite Quarry Elementary School and Audicote in East Rowan and South Rowan High Schools), (2) that Rowan was damaged by Gypsum's negligence, (3) that Gypsum defrauded Rowan with respect to the above schools, and (4) that Rowan was entitled to recover $812,984.21 in compensatory damages and $1,000,000.00 in punitive damages. The trial court entered judgment in accordance with that verdict, and Gypsum moved for judgment notwithstanding the verdict or a new trial. The trial court denied that motion.

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[103 N.C. App. 288 (1991)]

On appeal Gypsum lists in the record one hundred and seven assignments of error. We note initially that twenty-nine of those are not discussed nor even cited in Gypsum's brief; they are deemed abandoned. N.C.R. App. P. 28(a). We note further that for the most part Gypsum has brought forward objections overruled by the trial court that are now captioned "assignments of error." Rule 10(c)(1) of the North Carolina Rules of Appellate Procedure provides that "[e]ach assignment of error shall, so far as practicable, be confined to a single issue of law." Thus, we address Gypsum's remaining seventy-eight assigned errors according to the issues of law which are raised collectively. Those issues of law may be subsumed under the following categories: (1) the trial court's denial of Gypsum's motions for directed verdict and judgment notwithstanding the verdict, (2) the trial court's rulings on evidentiary questions, and (3) the trial court's instructions to the jury.

[1] Gypsum contends that the trial court erred in refusing to grant its motions for directed verdict and judgment notwithstanding the verdict as to Rowan's claim for fraud and misrepresentation and as to punitive damages. Gypsum contends further that, based on statutes of limitation, it is entitled to judgment notwithstanding the verdict as to all claims. We disagree with both assertions.

A motion for judgment notwithstanding the verdict "is essentially a renewal of an earlier motion for directed verdict." *Bryant v. Nationwide Mutual Fire Ins. Co.*, 313 N.C. 362, 368-69, 329 S.E.2d 333, 337 (1985). At trial and on appellate review the same standard applies to both motions. *Smith v. Pass*, 95 N.C. App. 243, 255, 382 S.E.2d 781, 789 (1989). The trial court

> must view all the evidence that supports the non-movant's [here the plaintiff's] claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor.

*Bryant*, 313 N.C. at 369, 329 S.E.2d at 337-38. As appellate reports have frequently noted, a motion for judgment notwithstanding the verdict is granted cautiously and sparingly. *Id.* at 369, 329 S.E.2d at 338; *Smith v. Pass*, 95 N.C. App. at 255-56, 382 S.E.2d at 789.

Thus, the trial court erred on this question only if, viewing the evidence in the light most favorable to Rowan's claim and giving Rowan the benefit of every reasonable inference to be drawn from the evidence, no jury could reasonably find that Gypsum defrauded Rowan. The elements of fraud are: "[f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981). Where "there is a duty to speak the concealment of a material fact is equivalent to fraudulent misrepresentation." *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198, 225 S.E.2d 557, 565 (1976).

> Fraud may be committed by suppression of the truth as much as by a false representation. . . .
>
> * * * *
>
> Where a material defect is known to the seller, and he knows that the buyer is unaware of the defect and that it is not discoverable in the exercise of the buyer's diligent attention or observation, the seller has a duty to disclose the existence of the defect to the buyer.

*Carver v. Roberts*, 78 N.C. App. 511, 512-13, 337 S.E.2d 126, 128 (1985) (citations omitted). Even under circumstances where a vendor may have no duty to speak, "if he does assume to speak he must make a full and fair disclosure as to the matters he discusses." *Ragsdale v. Kennedy*, 286 N.C. 130, 139, 209 S.E.2d 494, 501 (1974). Recovery in fraud also requires justifiable reliance by the plaintiff in acting or refraining from action because of the defendant's fraudulent misrepresentation. *See* W. Prosser, *Handbook of the Law of Torts* §§ 105, 108 (5th ed. 1984); Restatement (Second) of Torts § 537 (1977). We note, finally that in fraud actions "it is generally for the jury to decide whether plaintiff reasonably relied upon representations made by defendant." *Stanford v. Owens*, 46 N.C. App. 388, 395, 265 S.E.2d 617, 622, *disc. review denied*, 301 N.C. 95 (1980).

On the issues of Gypsum's duty to disclose material information and its fraudulent misrepresentation by concealment of material facts, Rowan offered evidence tending to show the following: Gypsum acquired a product invented and patented by Dr. Paul Sabin, added asbestos to the original formula, and, from shortly after 1930 until

**ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.**

[103 N.C. App. 288 (1991)]

1964, "marketed and sold this product under the name Sabinite." In 1952-53 Gypsum developed and marketed another acoustical plaster which contained asbestos: Audicote. In 1936 Gypsum and ten other companies "agree[d] to underwrite certain experiments with asbestos dust to be conducted by Dr. Leroy U. Gardner, Director of the Saranac Laboratory, Saranac Lake, New York." Among others, the experiments addressed these questions:

(1) What concentration of dust is necessary to produce the fibrosis of the lungs which is designated as asbestosis.

(2) Whether exposure to asbestos dust will produce asbestosis without the existence of previous infection and whether the X-ray changes found in advanced human asbestosis can be reproduced in animals without infection.

(3) Whether the fibrosis produced by asbestos is of the progressive type, that is, will the fibrosis increase (once it has started) after exposure to the dust has ceased.

The agreement between Gardner and the sponsoring companies provided that

the results obtained will be considered the property of those who are advancing the required funds, who will determine whether, to what extent and in what manner they shall be made public. In the event it is deemed desirable that the results be made public, the manuscript of your study will be submitted to us for approval prior to publication.

Rowan's evidence tended to show that in February 1943 Gardner reported on the results of his experiments. His cover letter stated: "The question of cancer now seems more significant than I had previously imagined." His report included the following observations:

*Disability*

Clinical experience suggests that truly disabling asbestosis is manifested by less striking X-ray changes than a corresponding degree of silicosis. Such disability in asbestosis is due to disease within the lungs and not to secondary heart disease. As in silicosis, associated pulmonary infection increases the amount of severity of the dust fibrosis with resultant accentuation of disability. There is urgent

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[103 N.C. App. 288 (1991)]

need for a careful physiological study of pulmonary function in asbestosis of varying severity.

*  *  *  *

III *Peculiar Characteristics of Asbestosis*

(a) Localization of fibrous minerals in lungs differs from that of granular dust particles.

Fibres like chrysotile having a certain degree of flexibility and elasticity accumulate within the finest air tubes. Granule dust is carried further on and is widely scattered through the terminal air spaces.

(b) Rate of tissues reaction to asbestos is much more rapid than to an active dust like quartz. Evidences of formation appear as soon as sufficient concentration of fibres has localized in specific areas; . . .

*  *  *  *

XIII *Recommendation for a New Standard of Safe Atmospheric Concentrate of Asbestos Dust.*

(a) While there is no official standard, the tentative one of 4 or 5 million particles per cubic foot of air is frequently quoted.

(b) This is probably unreliable because it is based upon sampling with a standard impinger which we have shown does not collect most of the fibres that are the source of hazard.

Regarding the Saranac Experiments, Rowan's evidence tended to show further that Gardner's report was not published prior to his death in 1946 and that in September 1948 a draft final report prepared by Dr. Arthur Vorwald, Gardner's permanent successor, was submitted to Vandiver Brown, the representative of the sponsoring companies. This draft included a brief section on the relationship between inhalation of asbestos and neoplasia (the development of tumors, especially malignant tumors). Brown sent copies of this draft to Gypsum and other sponsors and suggested

Saranac will undoubtedly wish to publish the report either independently or in conjunction with the proposed report on human asbestosis and it would likewise appear desirable from

the point of view of the industry that the report be published provided some of the speculative comments are omitted. As a preliminary to a discussion with representatives of Saranac, a meeting of representatives of the companies which financed the experiments is indicated. . . .

. . . If you are unable to have a representative attend, it would be desirable for you to designate some representative of another company to act for you in connection with decisions that will have to be made.

Replying by telegram, Gypsum requested Brown "to act for us in connection with decisions." The representatives of the underwriting companies who attended the meeting recommended "that all reference to cancer or tumors should be omitted." The published version of Vorwald's draft, characterized as "a complete survey of [Gardner's] entire experimental investigation," made no mention of neoplastic disease or of Gardner's statements on occupational asbestos standards.

Regarding Gypsum's knowledge of the potential dangers of Sabinite and Audicote and of product defects which increased those dangers, Rowan's evidence tended to show, finally, that Sabinite and Audicote exhibited bonding and dusting problems which were not disclosed. In response to a complaint, an internal report requested in November 1951 by D. W. Gaston, assistant sales manager, concluded that

Sabinite "M" at best can not be considered a hard material, and the surface of properly applied Sabinite "M" can be indented by punching with the fingers.

A memorandum addressed to "all architect service representatives" in January 1956 evaluated Audicote as follows: "Structurally this material has the least guts [compared to Sabinite and Hi-lite] and it is possible to have fine sifting from slight surface abrasion or vibration." An internal document, prepared by Gypsum in 1966, noted that the company's "present spray applied product [Audicote] has too 'soft' a finish."

As to fraudulent misrepresentation on which Rowan justifiably relied when South Rowan High was constructed during the period 1958 to 1961, Gypsum conceded at trial that its brochures on products were routinely included in Sweet's Catalog which contains information architects "refer to in specifying products for installa-

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[103 N.C. App. 288 (1991)]

tion within a building." Gypsum's brochures advertised Audicote as "having exceptional adhesive qualities" and being "ideal for use in schools, churches, hospitals." Rowan adduced evidence tending to show that none of Gypsum's brochures mentioned the potential hazards of asbestos or of Audicote's reported problems with dusting.

Howard Bangle, the architect who designed South Rowan High School and ordered the acoustical plaster installed in it, testified that in specifying products he relied on Sweet's Catalog and on manufacturer's representatives. He testified further as follows:

> Q. Did you expect that the acoustical ceiling plaster product that you were specifying would dust or delaminate or otherwise deteriorate and come apart?
>
> A. No.
>
> \* \* \* \*
>
> Q. Mr. Bangle, did anybody from U.S. Gypsum Company ever tell you that their product Audicote was subject to fine sifting from slight surface abrasion or vibration?
>
> MR. LIVINGSTON: Objection.
>
> A. No.
>
> \* \* \* \*
>
> Q. Mr. Bangle, if you had been made aware of these complaints about Audicote that we have just been talking about and if you had been made aware of the qualities of Audicote that we have just been discussing, would you have ever included it in your specifications for South Rowan?
>
> MR. LIVINGSTON: Objection.
>
> A. No.

Although Gypsum contends in its brief that "Rowan offered no evidence that U.S. Gypsum sold any acoustical plaster product directly to Rowan," in oral argument at trial Gypsum conceded that Howard Bangle was Rowan's agent. "[W]here fraud is worked upon an agent by a third person, either by misrepresentation or by silence, the fraud is considered as worked upon the principal, and the latter has a right of action against the third person for redress." 3 Am. Jur. 2d *Agency* § 298 (1986); *see also* Restatement (Second) of Agency § 315 (1958).

While we acknowledge the lack of any prior decision in North Carolina directly on point on this specific issue of fraud, the existence of a claim of fraud under these circumstances is a logical extension of our law providing civil sanctions for fraudulent conduct. Fraud embraces "all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." Black's Law Dictionary 594 (5th ed. 1979). A manufacturer's concealment of information concerning significant health risks is not purged by the manufacturer's dealing only with middlemen or agents and not with the ultimate purchasers or users. To hold to the contrary is to condone behavior the law otherwise finds abhorrent.

In light of the evidence summarized above and the inferences permissible from it, we hold that a jury could reasonably find that Gypsum defrauded Rowan with respect to South Rowan High School. Thus, the trial court did not err in denying Gypsum's motions for directed verdict and judgment notwithstanding the verdict as to fraud. Because the jury's finding of fraud as to any of the schools at issue was sufficient to support punitive damages, *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 112-14, 229 S.E.2d 297, 301-02 (1976), the trial court did not err in denying Gypsum's motions as to punitive damages. Regarding Gypsum's contention that it is entitled to judgment notwithstanding the verdict as to all claims on the ground that they are barred by statutes of limitation, it is sufficient to note that this Court has already held to the contrary, and we are bound by that holding. *Rowan County*, 87 N.C. App. at 115, 359 S.E.2d at 820, *disc. review denied*, 321 N.C. 297, 362 S.E.2d 782 (1987); *In re Harris*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

[2] We turn next to Gypsum's contention that a new trial should be granted because of error committed in the admission of evidence. Gypsum contends first that the admission of post-sale evidence was improper. "Evidence of U.S. Gypsum's knowledge or conduct during the many years after the installation of the products in Rowan's buildings," Gypsum argues in its brief, "was irrelevant to plaintiff's claims of negligence, fraud and misrepresentation, and punitive damages." Gypsum contends further that the admission of this body of evidence unfairly prejudiced it to such an extent

that a new trial is required. We do not agree that this evidence was irrelevant or that a new trial is warranted.

Gypsum argues, in essence, that post-sale evidence can go only to the issue of knowledge. Gypsum's argument overlooks the fact that much of the post-sale evidence in the case below goes not to knowledge but to the nature of soft acoustical plaster containing asbestos. Gypsum contended at trial that, but for Environmental Protection Agency regulations, the kind of product it marketed as Audicote would be appropriate for use in schools today. Rowan was thus entitled to offer, as the United States District Court for South Carolina recently noted, evidence going "to the issue of the unfit nature of asbestos for friable products in school buildings." *Spartanburg School District Seven v. United States Gypsum Co.*, No. 83-1744-3, slip. op. at 12 (D.S.C. July 29, 1987). On this basis evidence from plaintiff's exhibits U-320, U-321, U-322, U-323, U-325, U-327, U-339, U-341, and U-375, to which defendant objected at trial, was properly admitted. All of these documents dealt with Audicote's tendency to "excessive fissuring" or other characteristics related to its softness or friability.

Citing *Hinson v. Dawson*, 244 N.C. 23, 92 S.E.2d 393 (1956), Gypsum contends in its brief that, "where intentional misconduct is at issue, as in fraud and punitive damages, it is clearly improper to consider U.S. Gypsum's alleged knowledge of any potential hazards subsequent to the sale of such products." Gypsum's reliance on that case is misplaced; *Hinson* reviews the history of punitive damages in this jurisdiction and discusses the causes of action for which they are allowable, but it has nothing to say about the admissibility of post-sale evidence to show intent in fraud claims. *Id.* Contrary to Gypsum's assertion that its "conduct must be judged as of 1960, the last date of sale and installation of the acoustical plaster products at issue," our Supreme Court has held that, in fraud claims, " '[s]ubsequent acts and conduct are competent on the issue of original intent and purpose.' " *Rush (Cross) v. Beckwith*, 293 N.C. 224, 232, 238 S.E.2d 130, 136 (1977) (quoting *Early v. Eley*, 243 N.C. 695, 701, 91 S.E.2d 919, 923 (1956) ). On that rationale we cannot say that the trial court abused its discretion in admitting an excerpt from Gypsum's corporate counsel's "Report to the Board of Directors on Asbestos Litigation" dated 10 November 1982. *See Dykes v. Raymark Industries, Inc.*, 801 F.2d 810, 817-18 (6th Cir. 1986), where the court found post-sale evidence relevant to and

admissible on the issue of whether defendant "suppressed information about asbestos dangers."

Gypsum also assigns error to the admission of post-sale evidence concerning its removal of "insulation materials and other products" containing asbestos from its own plants. The documents at issue (plaintiff's exhibits U-609.04, -609.083, -620, -625) mandated the removal, among other products, of friable asbestos, defined as "any material containing more than one percent of asbestos by weight that hand pressure can crumble, pulverize, or reduce to powder when dry." Evidence of removal of asbestos "is relevant to the issue of property contamination from asbestos." *City of Greenville v. W.R. Grace & Co.*, 640 F.Supp. 559, 572 (D.S.C. 1986). Thus, we find no abuse of discretion by the trial court in admitting this evidence.

[3] As for the evidentiary issues regarding the admission of documents relating to the Saranac Laboratory experiments (the Saranac documents), Gypsum first contends that, contrary to N.C. Gen. Stat. § 8C-1, Rule 901 (1988), the following exhibits were admitted into evidence without authentication: U-007, -009, -29(2), -53, -58, -63, -65, -66, -73, -084, -089, -092, -98, -104, -110, -111, -114, -138, -141, and -152. We disagree. Rule 901 provides in pertinent part as follows:

> (a) *General provision.*—The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

> (b) *Illustrations.*—By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

> \* \* \* \*

> (8) Ancient Documents or Data Compilations.—Evidence that a document or data compilation, in any form, (A) is in such condition as to create no suspicion concerning its authenticity, (B) was in a place where it, if authentic, would likely be, and (C) has been in existence 20 years or more at the time it is offered.

Regarding the authenticity of the Saranac documents, the following exchange occurred at trial:

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[103 N.C. App. 288 (1991)]

COURT: Well, let me ask, Peter, which—assuming that you know what documents he intends to offer: A, which of these documents do you object to; B, of the projection or the forecast of the testimony of Dr. Schepers, what aspect of that do you intend to object to? First as to reports or exhibits or whatever.

MR. LYNCH [Counsel for Gypsum]: Yes, sir. Well, generally speaking I object to—if we're going to talk about the mass of Saranac documents, the majority of them, because the majority of them were never received by or sent to or came from the files of U.S. Gypsum. . . .

* * * *

. . . Now, there's not going to be any dispute about signatures on these documents. We're not going to have, I don't believe, unless I'm not thinking right, I don't think we're going to contest Vorwald's signature or Gardner's signature so that—

MR. WESTBROOK [Counsel for Rowan]: The documents are authentic.

MR. LYNCH: That's been stipulated to for the majority of them if not all of them. My point is basically this: Dr. Schepers was not involved in any of this Gardner study. He came to Saranac four years, I believe, after the final report was completed . . . and I don't think that this is the proper witness to put these documents in through. That's the general statement.

* * * *

MR. WESTBROOK: Your Honor, these were documents generated by Saranac. Some of the copies were found either in the files of the recipients of the letters from Saranac, recipients of the reports from Saranac; but Dr. Schepers can identify them through the signatures of Dr. Gardner, for instance, as documents that were prepared by Saranac.

MR. LYNCH: That's not going to be an issue. The issue is whether they were ever seen by my client and whether they're relevant to prove anything against my client.

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[103 N.C. App. 288 (1991)]

Stipulation that a document is genuine authenticates it for purposes of Rule 901(a). *Olympic Products v. Roof Systems, Inc.*, 88 N.C. App. 315, 323, 363 S.E.2d 367, 372, *disc. review denied*, 321 N.C. 744, 366 S.E.2d 862 (1988). While the record is ambiguous on this point, it appears that Gypsum stipulated at trial to the authenticity of at least seven of Rowan's exhibits: U-6, U-29, U-110, U-111, U-118, U-129, and U-76. Even in the absence of stipulation, we find, on the basis of Rule 901(b)(8), no error by the trial court in admitting U-110, U-111, U-129 and the remaining Saranac documents, which include the agreement among eleven companies "to underwrite certain experiments" at Saranac Laboratory, reports on the experiments at Saranac, correspondence between Saranac and the experiments' sponsors, and correspondence between Gypsum and the other sponsors or their agent. No suspicion concerning the authenticity of those documents is raised by their condition or internal consistency; their archival locations were logical for authentic documents; and they had been in existence for more than twenty years.

Gypsum contends further that evidence from the Saranac documents was inadmissible both on the grounds of hearsay and relevance. We disagree.

Once the documents were authenticated, evidence in the Saranac documents listed above was admissible pursuant to the following exception to the hearsay rule: "Statements in Ancient Documents.— Statements in a document in existence 20 years or more the authenticity of which is established." N.C. Gen. Stat. § 8C-1, Rule 803(16) (1988). Our Rule 803(16) is identical to the federal rule and may be applied to any kind of document. 1 H. Brandis, *Brandis on North Carolina Evidence* § 152 (3d ed. 1988). Evidence offered under this rule is subject to the general requirements applicable to hearsay exceptions, for example, firsthand knowledge by declarant (which "may appear from the statement or be inferable from circumstances") and probative value balanced against the danger of unfair prejudice. McCormick, *McCormick on Evidence* § 324 (E. Cleary 3d ed. 1984); *see also* 11 J. Moore, *Moore's Federal Practice* § 803(16)[4] (2d ed. 1989). Having reviewed the statements in the documents at issue here, we find no reversible error in the trial court's rulings which admitted them into evidence. As for Gypsum's argument that the statements in the documents were not relevant to Rowan's claims, we find it completely untenable and decline to discuss it.

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[103 N.C. App. 288 (1991)]

**[4]** Gypsum contends further that the trial court erred in allowing "one of plaintiff's witnesses, Dr. Gerritt Schepers, an alleged fact witness testifying for this purpose, to discuss certain animal dusting experiments which were conducted at the Saranac Laboratory . . . between approximately 1937 and 1946, notwithstanding the fact that Dr. Schepers admitted that he had no connection with the Saranac Laboratory at the time." Gypsum contends that testimony of Dr. Schepers concerning the Saranac experiments undertaken by Dr. Gardner and associated correspondence was inadmissible hearsay. Gypsum assigns as error the admission of testimony appearing at transcript page 489, line 7 through page 514, line 25; and page 636, line 6 through page 638, line 17.

We note initially that the qualification of Dr. Schepers as an expert in asbestosis and pneumoconiosis (diseases caused by inhalation of irritant mineral or metallic particles) consumes at least six pages of the trial transcript. While much of the testimony of which Gypsum complains is clearly expert opinion testimony regarding the significance of Dr. Gardner's experiments and other technical matters, much of the testimony does concern the creation of documents, the chronology of revisions to those documents, and correspondence which antedated Dr. Schepers' appointment as Director of the Saranac Laboratory in 1954.

However, assuming without deciding that portions of this testimony are inadmissible hearsay, Gypsum's assignment of error to this lengthy testimony is inadequate to preserve the alleged error for review. Rule 10 of the North Carolina Rules of Appellate Procedure provides in pertinent part as follows:

(c) *Assignments of Error.*

(1) *Form; Record References.* A listing of the assignments of error upon which an appeal is predicated shall be stated at the conclusion of the record on appeal, in short form without arguments, and shall be separately numbered. Each assignment of error shall, so far as practicable, be confined to a single issue of law; and shall state plainly, concisely and without argumentation the legal basis upon which error is assigned. *An assignment of error is sufficient if it directs the attention of the appellate court to the particular error about which the question is made, with clear and specific record or transcript references.* (Emphasis added.)

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[103 N.C. App. 288 (1991)]

Gypsum's reference to twenty-nine pages inclusively encompasses testimony on at least twelve documents or letters. Three of these were not included in the exhibits submitted as a part of the record and cannot be the basis of an assignment of error. N.C.R. App. P. 9(a). Others originated at Saranac and remained in the records of Saranac's regularly conducted activities; still other documents were obtained from the files of recipients of correspondence from Saranac. Gypsum fails to specify which of these documents is at issue or how Schepers' testimony about any particular document violates the hearsay rule. Accordingly, its assignment of error fails to conform to the Rules of Appellate Procedure.

Gypsum's remaining assignment of error to testimony by Schepers, that "it was without foundation, incompetent, and not relevant," has been reviewed and found to be without merit.

[5] Gypsum contends further in its brief that the trial court erred in allowing "Rowan to cross-examine U.S. Gypsum's expert witnesses with hearsay statements from publications which were not qualified as reliable and authoritative." Gypsum assigns error to nine instances of cross-examination testimony admitted, it now argues, in violation of N.C. Gen. Stat. § 8C-1, Rule 803(18) (1988).

On cross-examination wide " 'latitude is given counsel in testing for consistency and probability matters related by a witness on direct examination.' " *State v. Burgin*, 313 N.C. 404, 406, 329 S.E.2d 653, 656 (1985) (quoting *Maddox v. Brown*, 233 N.C. 519, 524, 64 S.E.2d 864, 867 (1951)). As for cross-examination pursuant to Rule 803(18), the rule provides:

> (18) Learned Treatises. — *To the extent called to the attention of an expert witness upon cross-examination* or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits. (Emphasis added.)

While the Advisory Committee's Note on Rule 803(18) states in part that the "rule does not require that the witness rely upon or recognize the treatise as authoritative, thus avoiding the possibility

that the expert may at the outset block cross-examination by refusing to concede reliance or authoritativeness," other authority suggests that the reliable authority of learned treatises used in cross-examination of expert witnesses must be established by a method permitted in the rule. *See* McCormick, *McCormick on Evidence* § 321 (E. Cleary 3d ed. 1984) and 1 H. Brandis, *Brandis on North Carolina Evidence* § 136 (3d ed. 1988). In two of the instances at issue, Gypsum's expert witness conceded, albeit reluctantly, the authoritativeness of the treatise being used in cross-examination. In a third instance the concession of authority was ambiguous and arguable.

However, in none of the instances assigned as error was Gypsum's objection at trial based on the grounds now assigned on appeal. In at least six instances Gypsum objected on the basis that the witness had never "seen the document before nor did he make any use of it during his direct examination. No proper foundation has been laid." The rule does not require that the treatise at issue must have been relied on by the expert during his direct examination. N.C. Gen. Stat. § 8C-1, Rule 803(18) (1988); McCormick, *McCormick on Evidence* § 321 (E. Cleary 3d ed. 1984); and 1 H. Brandis, *Brandis on North Carolina Evidence* § 136 (3d ed. 1988). A party "who fails to challenge the reliability of authority prima facie admissible under Rule 803(18) must overcome a presumption of admissibility on appeal." *State v. Oliver*, 85 N.C. App. 1, 14, 354 S.E.2d 527, 535 (1987). Moreover, in these six instances and as well as the remaining three, the error assigned on appeal was not the specific basis of Gypsum's objection at trial and hence was not brought to the attention of the trial court. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(b)(1). Accordingly, Gypsum's assignments of error to the cross-examination of their expert witness with allegedly hearsay material is not properly presented.

[6] Gypsum's final assignments of error to evidentiary rulings during trial are made to the court's exclusion of evidence concerning comparative risk. On 9 August 1989, the trial court entered an order which granted "Plaintiff's Motion to Preclude Non-Asbestos Testimony . . . with leave to Defendant to renew its position at trial and to make an offer of proof at the appropriate time." On

appeal Gypsum assigns error specifically to the exclusion of (1) testimony from Dr. Peter Elmes concerning an editorial in the British Medical Journal *Lancet* and (2) testimony from Dr. Kenneth Crump concerning risk assessment. Gypsum argues that "the trial court abused its discretion in excluding comparative risk evidence."

After sustaining objection to Elmes' testimony concerning a portion of the *Lancet* material, the trial court stated: "During the noon recess you [counsel for Gypsum] can get that into the record." However, while an offer of proof concerning comparative risk was made during that recess no offer of proof regarding the testimony on the *Lancet* material was made. "Where the record fails to show what the witness would have testified had he been permitted to answer questions objected to, the exclusion of such testimony is not shown to be prejudicial." *State v. Kirby*, 276 N.C. 123, 133, 171 S.E.2d 416, 423 (1970).

Gypsum's offer of proof concerning Crump's evidence on comparative risk showed that he would have testified substantially as follows:

Q. Tell us a little bit about your experience in comparative risk assessment.

A. . . . For example, in school asbestos cases, I've compared the risk from asbestos in schools to the risk from smoking cigarettes, the risk from having a chest x-ray, the risk from living in Aspen and being in a higher level and having more exposure to cosmic radiation and a number of different things, playing high school football, for example.

Assuming, for the sake of argument, that this evidence was admissible as having some relevance (which we find dubious), we hold that the trial judge was well within his discretionary authority to exclude it on the grounds that its probative value was substantially outweighed by the danger of "confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time." N.C. Gen. Stat. § 8C-1, Rule 403 (1988); *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986).

We now turn to Gypsum's assignments of error to the jury instructions on three issues: post-sale evidence, "state of the art," and punitive damages. Gypsum contends that the trial court erred (1) in declining to instruct the jury not to consider post-sale evidence in considering the claims that were submitted to them, (2) in refus-

ing Gypsum's proffered instruction on "state of the art," and (3) in misstating the law of North Carolina on punitive damages.

[7] As for the first issue, it is sufficient to note that Gypsum's request did not comply with N.C. Gen. Stat. § 1-181 (1983) and N.C. Gen. Stat. § 1A-1, Rule 51(b) (1990), both of which require that requests for special instructions be submitted in writing and before the judge's charge to the jury is begun.

Gypsum requested jury instructions included several variants on the issue of "state of the art." In substance the following instruction is typical of those presented:

> To be a proximate factor in bringing about plaintiff's injury, the risk of harm must have been foreseeable by a reasonable manufacturer at the time the product was sold. . . . The defendant, United States Gypsum, cannot be held liable if it did not know or could not have reasonably been expected to discover that the asbestos of the type and concentration used in United States Gypsum's products was dangerous during the 1950's and 1960's when the materials were manufactured.

"The court's refusal to submit requested instructions is not error when the instructions fully and fairly present the issues in controversy." *Tan v. Tan*, 49 N.C. App. 516, 521, 272 S.E.2d 11, 15 (1980). North Carolina's appellate reports have repeatedly stated that "the trial court's charge to the jury must be construed contextually and isolated portions of it will not be held prejudicial error when the charge as a whole is correct." *State v. Boykin*, 310 N.C. 118, 125, 310 S.E.2d 315, 319 (1984). With those principles in mind we have reviewed the trial court's instructions in light of Gypsum's requested instructions and have found no prejudicial error.

Lastly, we find Gypsum's assignment of error to the trial court's instructions on punitive damages to be entirely devoid of merit.

We find Gypsum has failed to demonstrate that a new trial should be granted.

For the reasons stated above we find no prejudicial error in the trial of the case below.

No error.

ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.

[103 N.C. App. 288 (1991)]

Judge PARKER concurs.

Judge GREENE concurs in part and dissents in part.

Judge GREENE concurring in part and dissenting in part.

I concur with the majority that there was no error in either the compensatory damages award or the trial court's denial of Gypsum's motions for directed verdict and judgment notwithstanding the verdict with regard to Rowan's fraud claim as to South Rowan High School [South Rowan]. However, I disagree with the majority's holdings that "the trial court did not err in denying Gypsum's motions for directed verdict and judgment notwithstanding the verdict as to fraud" regarding Granite Quarry Elementary School [Granite Quarry] and East Rowan High School [East Rowan], and that "[b]ecause the jury's finding of fraud as to any of the schools at issue was sufficient to support punitive damages, . . . the trial court did not err in denying Gypsum's motions as to punitive damages."

The majority implicitly recognizes that the "reasonable reliance" element of a fraud claim need not be proven by direct evidence; circumstantial evidence is sufficient. *W. R. Grace & Co. v. Strickland*, 188 N.C. 369, 373-74, 124 S.E. 856, 858 (1924); 37 Am. Jur. 2d *Fraud and Deceit* §§ 448, 479 (1968). "A basic requirement of circumstantial evidence is reasonable inference from established facts." *Lane v. Bryan*, 246 N.C. 108, 112, 97 S.E.2d 411, 413 (1957); 37 Am. Jur. 2d *Fraud and Deceit* § 472. While older case law held that an inference could not be based upon another inference, "[t]here is no logical reason why an inference which naturally arises from a fact proven by circumstantial evidence may not be made." *State v. Childress*, 321 N.C. 226, 232, 362 S.E.2d 263, 267 (1987).

"The purpose of a motion for directed verdict is to test the legal sufficiency of the evidence for submission to the jury and to support a verdict for the non-moving party." *McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350, *disc. rev. denied*, 327 N.C. 140, 394 S.E.2d 177 (1990). "[I]f the non-movant presents such relevant evidence as a reasonable mind might accept as adequate to support the elements of the non-movant's claim or defense [i.e., substantial evidence], the trial court must deny a motion for a directed verdict." *Hines v. Arnold*, 103 N.C. App. 31, 34, 404 S.E.2d 179, 181-82 (1991). Rowan's circumstantial

evidence, viewed in the light most favorable to it, is substantial evidence that Rowan reasonably relied on Gypsum's alleged fraudulent misrepresentations or concealment with regard to South Rowan. Rowan's evidence shows that (1) Gypsum's "promotional literature was the major way in which it communicated with architects," (2) this literature contained the alleged fraudulent misrepresentations or concealment, (3) this literature was routinely included in Sweet's Catalog [Sweet's], (4) Howard Bangle [Bangle], the architect for South Rowan, ordered Gypsum's products for South Rowan, (5) Bangle testified that at the time he was the architect for South Rowan, he relied on Sweet's when specifying products for a job, (6) Bangle was Rowan's agent, and (7) Bangle testified that he would not have allowed Gypsum's products to be used had he known of their alleged defects.

Rowan, however, did not produce substantial evidence of reasonable reliance with regard to Granite Quarry or East Rowan. Bangle was not Rowan's agent for these schools, and the architects for them did not testify at trial. Rowan's evidence shows that (1) Gypsum's "promotional literature was the major way in which it communicated with architects," (2) this literature contained the alleged fraudulent misrepresentations or concealment, (3) the architects of Granite Quarry and East Rowan allowed Gypsum's products on these jobs, (4) Bangle "testified that all architects he knew used Sweet's," and (5) Bangle testified that he would not have allowed these products to be used had he known of their alleged defects. From this circumstantial evidence, Rowan argues that it has shown reasonable reliance by its architects on the alleged fraudulent misrepresentations or concealment with regard to Granite Quarry and East Rowan. I disagree.

With regard to South Rowan, the permissible inference of reasonable reliance by Rowan on Gypsum's alleged fraudulent misrepresentations or concealment in Sweet's is based upon the direct evidence that Bangle, as Rowan's agent, relied on Sweet's in specifying products for jobs, Sweet's routinely contained Gypsum's literature, Bangle ordered Gypsum's products, and Bangle would not have ordered them had he known of their alleged defects. However, the inference of reasonable reliance on Gypsum's literature in Sweet's by the architects on the Granite Quarry and East Rowan jobs is based upon an inference not supported by Rowan's evidence, i.e., that those architects, like Bangle, used Sweet's in specifying products for jobs. Rowan's evidence does not show that its Granite

**ROWAN COUNTY BD. OF EDUCATION v. U.S. GYPSUM CO.**

[103 N.C. App. 288 (1991)]

Quarry and East Rowan architects relied on Sweet's as Bangle did. To the contrary, Rowan's evidence shows only that all of the architects that Bangle knew used Sweet's. The evidence does not show that Bangle knew the architects on the Granite Quarry and East Rowan jobs. Accordingly, an inference of reasonable reliance cannot be drawn from Rowan's evidence with regard to Granite Quarry and East Rowan because such an inference would be impermissibly based upon another inference not supported by circumstantial evidence but only upon pure speculation. Because Rowan did not produce substantial circumstantial evidence of reasonable reliance with regard to Granite Quarry and East Rowan, Gypsum's motions for directed verdict and judgment notwithstanding the verdict as to fraud should have been allowed with regard to those schools.

Furthermore, even though Rowan produced substantial evidence of fraud with regard to South Rowan, the jury award of punitive damages was not based solely upon that claim, but was instead based on a finding of fraud with regard to all three schools. The verdict form submitted to the jury and the jury's answers read in pertinent part:

5. Did the defendant defraud the plaintiff with respect to:

A. Granite Quarry Elementary School          YES.

B. South Rowan High School                   YES.

C. East Rowan High School                    YES.

. . . .

7. If the fifth issue or any part thereof is answered "yes," what amount of damages, if any, is plaintiff entitled to recover of the defendant?

ANSWER: $1,000,000.00.

While punitive damages would have been proper on a jury determination that Gypsum had defrauded Rowan with respect to South Rowan, the award for $1,000,000 in punitive damages was based on three separate acts of fraud, two of which should not have been submitted to the jury. Because there is a "substantial likelihood" that some portion of the punitive damages award went to punish Gypsum for the alleged Granite Quarry and East Rowan frauds, which claims should have been dismissed, Gypsum is entitled to a new trial on the issue of punitive damages as they

relate to Gypsum's fraud claim with regard to South Rowan. *Cf. Shaver v. N.C. Monroe Constr. Co.*, 63 N.C. App. 605, 616-17, 306 S.E.2d 519, 526-27 (1983), *disc. rev. denied*, 310 N.C. 154, 311 S.E.2d 294 (1984) (substantial likelihood that compensatory and punitive damages issues so intertwined in minds of jurors thus requiring new trial on damages).