**SCHENK v. HNA HOLDINGS, INC.**

[167 N.C. App. 47 (2004)]

GARY RAY SCHENK, SR., Plaintiff v. HNA HOLDINGS, INC., also known as TREVIRA, INC. formerly HOECHST CELANESE, INC. and FIBER INDUSTRIES, INC., Defendant

DONALD LEE BELL, Plaintiff v. HNA HOLDINGS, INC., also known as TREVIRA, INC. formerly HOECHST CELANESE, INC. and FIBER INDUSTRIES, INC., Defendant

No. COA03-1094

No. COA03-1095

(Filed 16 November 2004)

**1. Damages and Remedies— punitive—asbestos—destruction of memo about improper handling**

The trial court did not err by granting a directed verdict for defendant on punitive damages in an asbestos case. The destruction of a memo about improper handling of asbestos did not demonstrate willful disregard for the safety of others because defendant's resident engineer told the expert who wrote the memo that he wanted to be informed, but not in writing. Moreover, there was no evidence that the engineer was an officer, director, or manager, as required for punitive damages, and there was no evidence that the destruction of the memo was related to plaintiff's injuries.

**2. Damages and Remedies— punitive—asbestos removal—rejection of recommended method**

The rejection of an asbestos expert's recommendation of a method of asbestos removal does not demonstrate willful and wanton behavior, and a directed verdict was correctly granted for defendant on punitive damages. The expert admitted that no state or federal regulation required his recommended method, and that the removal was done properly within the regulations.

**3. Damages and Remedies— punitive—asbestos—violation of OSHA standards**

Violation of OSHA standards goes to negligence but is not by itself sufficient to take willful and wanton negligence to the jury, and a directed verdict was correctly granted for defendant on the issue of punitive damages in an asbestos case.

**4. Damages and Remedies— punitive—concealment of asbestos risk**

Plaintiffs' contention that punitive damages should have been submitted to the jury in an asbestos case because defendant will-

fully concealed risks of asbestos exposure was not supported by the evidence.

**5. Damages and Remedies— prior settlements—set-off**

The defendant in an asbestos case was entitled to a set-off for prior workers' compensation settlements. The compensatory damages in this trial and the prior settlements were for the same injuries and the same damages.

Appeal by plaintiffs from judgments entered 3 January 2003 by Judge Charles C. Lamm in Rowan County Superior Court. Heard in the Court of Appeals 30 August 2004.

*Wallace and Graham, P.A., by Mona Lisa Wallace, and Mauriello Law Offices, by Christopher D. Mauriello, for plaintiffs-appellants.*

*Kasowitz, Benson, Torres & Friedman, by Michael E. Hutchins, and Parker Poe Adams & Bernstein, LLP, by Josephine H. Hicks, for defendants-appellees.*

MARTIN, Chief Judge.

Plaintiffs' appeals in these cases present to this Court identical questions of law; therefore, we have consolidated the appeals pursuant to Rule 40 of the North Carolina Rules of Appellate Procedure. N.C. R. App. P. Rule 40 (2004). The appeals arise from lawsuits in which plaintiffs sought compensatory and punitive damages from defendant, HNA Holdings, Inc., for alleged occupational exposure to asbestos dust and fibers at defendant's Salisbury polyester manufacturing plant.

Summarized only to the extent necessary for an understanding of the issues raised on appeal, the evidence at trial tended to show that defendant, HNA Holdings, Inc., or its predecessors in interest, owned the Celanese Fiber Plant (Celanese), located in Salisbury, N.C., since operations began in 1966. Like many industrial plants built in the 1960's and 1970's, the Celanese plant was constructed with insulation containing asbestos.

Daniel Construction Company built the Celanese plant and then provided maintenance for the company in specialty areas such as welding, pipe fitting, rigging and insulation. Daniel and its successor in interest, Fluor Daniel (Daniel), employed plaintiff Schenk as a pipe fitter/welder beginning in 1975. Plaintiff Schenk worked for Daniel off and on until 1992 when Becon Construction Company

(Becon) took over Daniel's maintenance contract. He continued to work for Becon at Celanese until 1995. As a pipe fitter/welder plaintiff Schenk was exposed to insulation containing asbestos both through his work handling pipes and from being around people working with the insulation.

Daniel employed plaintiff Bell as an insulator for Celanese intermittently between 1973 and 1981, and then from 1988 until 1992. In 1992, when Daniel lost the overall maintenance contract to Becon, plaintiff Bell began working as an insulator for Becon and continued until 1995. At trial, plaintiff Bell testified he was exposed to asbestos dust in his work insulating pipes at Celanese while cutting the insulation on a band saw, "rasping" or smoothing the rough edges of the insulation, and while removing asbestos "in every facet of the plant."

Plaintiffs offered the testimony of James Whitlock (Whitlock), an asbestos handling and removal specialist who worked for SOS, a subsidiary of Daniel. Whitlock, who was hired to oversee the removal of asbestos material at Celanese, testified at trial that prior to his arrival in 1990, insulators for Daniel were removing asbestos from the Celanese plant. During his first walk-through of the plant after he was hired, Whitlock observed areas where the asbestos insulation was in a "dilapidated condition and was hanging from the pipes," areas where insulation was on the floor, and areas where insulation was "in piles." He also saw non-authorized individuals "handling and removing asbestos."

Whitlock testified that in a memorandum to the plant industrial hygienist, Dave Smith, the resident engineer, John Winter (Winter) and others, he informed them that "there was a lot of maintenance people that were doing removal of asbestos-containing insulation and that they were leaving the insulation lying around in the areas, and this was cause for concern because it was causing exposure." The next day, Winter asked Whitlock to "collect those letters and rip them up, take the letter out of [his] computer, off [his] hard drive, get it off floppy disk, and do away with it."

For asbestos removal, Whitlock recommended Celanese use a "global abatement procedure." In this procedure, a large area is contained and asbestos is totally removed from the entire area without other workers present. However, Whitlock's recommendation was rejected in favor of a "glove bagging" technique where only a small area is contained for removal of a small bit or piece of pipe insulation rather than abatement of the whole area. Other workers were often present during the glove bagging method.

SCHENK v. HNA HOLDINGS, INC.

[167 N.C. App. 47 (2004)]

Prior to trial, the court denied defendant's motion to strike the punitive damages claim but allowed an alternative motion to exclude any reference to punitive damages or defendant's financial worth until the court determined that plaintiffs had presented sufficient evidence to submit an issue of punitive damages to the jury. At the close of plaintiffs' evidence, after hearing arguments, the trial court granted defendant's motion for directed verdict on the issue of striking the punitive damages claim.

The jury returned verdicts in favor of plaintiffs, finding the maintenance and construction work performed by plaintiffs was an inherently dangerous activity. The jury also found plaintiffs were injured as a direct result of defendant's negligence. Plaintiffs were awarded compensatory damages for personal injuries. The trial court then conducted a "set-off" hearing and reduced the awards by the amount each plaintiff had recovered as a result of prior settlements from other sources.

---

I.

[1] Plaintiffs first assign error to the trial court's granting of defendant's motion for directed verdict on the issue of punitive damages. They argue there was sufficient evidence that defendant acted recklessly, willfully or intentionally to withstand defendant's motion. "The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991).

Our North Carolina statutes establish the requirements for punitive damages as follows:

> Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages were awarded:
>
> (1) Fraud.
>
> (2) Malice.
>
> (3) Willful or wanton conduct.

N.C. Gen. Stat. § 1D-15(a) (2003). The existence of the aggravating factor must be proved by clear and convincing evidence. N.C. Gen.

SCHENK v. HNA HOLDINGS, INC.

[167 N.C. App. 47 (2004)]

Stat. § 1D-15(b) (2003). Willful and wanton conduct is defined by statute as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7) (2003). To award punitive damages against a corporation, "the officers, directors, or managers of the corporation [must have] participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c) (2003). The jury awarded plaintiffs compensatory damages; therefore, the issue on appeal is whether there was sufficient evidence that the officers, directors, or managers of defendant, HNA Holdings, Inc., participated in or condoned willful or wanton conduct. *See* N.C. Gen. Stat. § 1D-15(c) (2003).

Plaintiffs first contend Winter's order to destroy Whitlock's memo constituted willful and wanton conduct by defendant. However, plaintiffs have not proved by clear and convincing evidence that destruction of the memo constituted "conscious and intentional disregard of and indifference to the rights and safety of others." N.C. Gen. Stat. § 1D-5(7). Whitlock testified Winter told him "he wanted to know about these things, to never put anything like that in writing again." Asking to be advised of improper handling of asbestos verbally rather than in writing does not demonstrate an intentional disregard to the safety of others. Furthermore, Winter was a resident engineer for Celanese; plaintiffs did not offer evidence that he was an officer, director or manager as required to award punitive damages against the defendant.

In addition, there is no evidence that the destruction of the memo was related to the injuries suffered by plaintiffs since the underlying conduct alleged in the memo was not necessarily connected to asbestos. *See Paris v. Kreitz*, 75 N.C. App. 365, 376-77, 331 S.E.2d 234, 243, *disc. review denied*, 315 N.C. 185, 337 S.E.2d 858 (1985). Whitlock admitted at trial that in each instance where he pointed out loose insulation on the floor, "it was taken care of." He also admitted the loose insulation was never tested so he was unsure if any or all of this insulation contained asbestos. Although Whitlock observed non-authorized workers removing insulation, he had no knowledge that they were actually removing insulation that contained asbestos. When asked if he could remember specific occasions when plaintiffs were near loose insulation, Whitlock replied, "I'd say probably . . . ."

The clear and convincing evidence standard is greater than a preponderance of the evidence standard required in most civil cases, *In*

re Montgomery, 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984), and requires "evidence which should 'fully convince.' " In re Smith, 146 N.C. App. 302, 304, 552 S.E.2d 184, 186 (2001) (citation omitted). Plaintiffs did not present clear and convincing evidence of the connection between the destruction of the memo and plaintiffs' alleged harm.

[2] Next, plaintiffs allege defendant's express rejection of Whitlock's recommendation to use the global method of asbestos removal demonstrates willful and wanton behavior. However, Whitlock admitted at trial that no state or federal regulation requires use of the global method. Furthermore, he agreed that the asbestos removal was "done properly and within the regulations."

[3] Plaintiffs also argue defendant's violation of Occupational Safety and Health Act (OSHA) standards was sufficient evidence of willful and wanton conduct to allow the question of punitive damages to go to the jury. OSHA regulations are evidence of custom and can be used to establish the standard of care required in the industry. Cowan v. Laughridge Construction Co., 57 N.C. App. 321, 325, 291 S.E.2d 287, 290 (1982), Sawyer v. Food Lion, Inc., 144 N.C. App. 398, 401, 549 S.E.2d 867, 869 (2001). However, "a violation of OSHA regulations is not negligence per se under North Carolina law." Geiger v. Guilford College Comm. Volunteer Firemen's, 668 F. Supp. 492, 497 (M.D.N.C. 1987); See Cowan, 57 N.C. App. at 324-25, 291 S.E.2d at 289-90. Therefore, assuming arguendo that defendant violated OSHA standards, this evidence goes only to the issue of defendant's negligence. Violation of OSHA standards does not, by itself, provide sufficient evidence of willful and wanton conduct to present the issue to the jury.

[4] Relying on Rowan County Bd. of Education v. U.S. Gypsum, 103 N.C. App. 288, 407 S.E.2d 860 (1991), aff'd in part and review improvidently granted in part, 332 N.C. 1, 418 S.E.2d 648 (1992), plaintiffs argue that defendant willfully concealed the risks of asbestos exposure rendering punitive damages appropriate. In Rowan, this Court affirmed the trial court's denial of defendant's motion for directed verdict and judgment notwithstanding the verdict on the issue of punitive damages because defendant defrauded Rowan by concealing the hazards of asbestos. Id. at 299, 407 S.E.2d at 866. Although this case is similar in that it involves third party asbestos claims in the premises liability context, the evidence at trial does not support a finding that Celanese willfully concealed informa-

SCHENK v. HNA HOLDINGS, INC.

[167 N.C. App. 47 (2004)]

tion about the risks of asbestos exposure. The evidence tended to show that OSHA regulations were posted on a bulletin board in the main hall at the entrance into Celanese. Clyde Miller, assistant to the safety superintendent from 1969 to 1980 testified that neither he, nor anyone in his department, ever deliberately withheld any information that impacted workers' safety.

According to the testimony of Dow Perry (Perry), Environmental Health and Safety Superintendent for Celanese from 1978 to 1990, the corporate office specified asbestos-free insulation for all their locations in 1973. He also testified that dust masks were available to maintenance workers in the 1970's. Celanese issued a standard practice document entitled "Control and Disposal of Asbestos Material" beginning in 1976 requiring, among other things, that asbestos be thoroughly wet before removed. Although Perry updated written procedures when he arrived in the department in 1978, the proper methods of removal were already in use.

The 1979 revision of "Control and Disposal of Asbestos Material" contained a section that required workers to "treat insulation as if it contained asbestos." Perry testified this meant workers were to prepare the work area, use personal protection and use work methods based on the OSHA regulations for asbestos removal regardless of whether it actually did contain asbestos. At least by 1979, air monitoring was implemented in Celanese including air sampling and monitoring Celanese and Daniel workers. Celanese had annual asbestos training sessions which were presented to all maintenance supervisors and mechanics.

In addition, Celanese shared information with Daniel, and Daniel developed its own asbestos training program for its workers. To make certain the established procedures were followed, Celanese had weekly safety inspections where a supervisor made certain the mechanics complied with procedures. These policies and procedures do not demonstrate a "conscious and intentional disregard of and indifference to the rights and safety of others" by Celanese as required by statute to award punitive damages. N.C. Gen. Stat. § 1D-5(7).

Plaintiffs also attempt to argue, in their appellants' briefs, that it was error for the trial court to prevent counsel from questioning prospective jurors on the issue of punitive damages during voir dire. However, there were no assignments of error in the record to support plaintiffs' arguments and the issue is not properly before us. N.C.

**SCHENK v. HNA HOLDINGS, INC.**

[167 N.C. App. 47 (2004)]

Rule App. P. 10(c)(1) (2004). Although defendant argues the issue in his brief, he failed to preserve the issue for appellate review by assigning error to the issue. N.C. R. App. P. 10(a) (2004).

## II.

**[5]** In their second assignment of error, plaintiffs argue the trial court erred by allowing defendant a full set-off for prior workers' compensation claim settlements and prior third-party settlement amounts paid to plaintiffs from other sources. Plaintiffs argue only that the workers' compensation claim settlements, which compensated plaintiffs for their inability to earn wages, were for a different injury, i.e. impairment to wage earning capacity, than the jury award at trial which compensated plaintiffs for their pain and suffering, future medical expenses and permanent injury.

"The purpose of the North Carolina Workers' Compensation Act is not only to provide a swift and certain remedy to an injured worker, but also to ensure a limited and determinate liability for employers." *Radzisz v. Harley Davidson*, 346 N.C. 84, 89, 484 S.E.2d 566, 569 (1997). The act, however, was "never intended to provide the employee with a windfall of a recovery from both the employer and the third-party tort-feasor." *Id.*

Workers' compensation benefits provide for the employee's inability to earn wages and do not provide for "physical pain or discomfort." *Branham v. Panel Co.*, 223 N.C. 233, 236, 25 S.E.2d 865, 867 (1943). Nevertheless,

> [t]he weight of both authority and reason is to the effect that any amount paid by anybody, whether they be joint tort-feasors or otherwise, for and on account of any injury or damage should be held for a credit on the *total recovery* in any action for the *same injury or damage.*

*Holland v. Utilities Co.*, 208 N.C. 289, 292, 180 S.E. 592, 593-94 (1935) (emphasis added); *See Baity v. Brewer*, 122 N.C. App. 645, 647, 470 S.E.2d 836, 838 (1996).

Each plaintiff sued defendant to recover for one injury, i.e., asbestos damage to his lungs. "Where '[t]here is one injury, [there is] still only one recovery.' " *Radzisz*, 346 N.C. at 89, 484 S.E.2d at 569 (citation omitted). Plaintiffs cannot recover workers' compensation benefits and damages from defendant for the same injury.

**DEPARTMENT OF TRANSP. v. HAYWOOD CTY.**

[167 N.C. App. 55 (2004)]

The final judgment determined plaintiffs were entitled to recover for their asbestos related injuries as compensatory damages. Compensatory damages provide recovery for, *inter alia,* mental or physical pain and suffering, lost wages and medical expenses. 22 Am Jur 2d Damages § 42. Set-offs, therefore, were appropriate as plaintiffs were compensated at trial for the same injury and the same damages as their previous settlements.

Affirmed.

Judges WYNN and McGEE concur.